2023 IL App (3d) 210423

Opinion filed July 26, 2023

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2023

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois, |
| Plaintiff-Appellant and Cross-Appellee, | ) ) | |
| | ) | Appeal No. 3-21-0423 |
| v. | ) | Appeal No. 3-21-0426 |
| | ) | Circuit No. 02-CF-1974 |
| TRAVARIS T. GUY, | ) ) | |
| Defendant-Appellee and Cross-Appellant. | ) ) ) | Honorable David M. Carlson, Judge, Presiding. |

_____

JUSTICE BRENNAN delivered the judgment of the court, with opinion.
Justices Hettel and Albrecht concurred in the judgment and opinion.

_____

**OPINION**

¶ 1        In appeal No. 3-21-0426, defendant, Travaris T. Guy, challenges the stage-two dismissal

of a claim set forth in his successive, postconviction petition made pursuant to the Post-Conviction

Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2014)). He argues that the jury was not properly

apprised of the mental state required for attempted first degree murder and that his attempted first

degree murder conviction was inconsistent with his second degree murder conviction and should

be outright reversed with no new trial. In appeal No. 3-21-0423, the State challenges the court's stage-three decision to grant defendant a new trial on the attempted first degree murder charge due to the trial court's allegedly confusing answers to jury questions. On its own motion, this court consolidated the appeals for purposes of decision, with No. 3-21-0426 being the lead case. For the reasons that follow, we agree with defendant's arguments in appeal No. 3-21-0426. We uphold defendant's conviction for second degree murder, which defendant has not challenged, but outright reverse defendant's attempted first degree murder conviction, with no new trial. We necessarily determine that the question posed by appeal No. 3-21-0423, whether potential jury confusion entitles defendant to a new trial on the attempted first degree murder charge, is moot.

¶ 2                                    I. BACKGROUND

¶ 3        Following a shooting that occurred on November 1, 2002, defendant was charged with three felony counts. Count I charged him with first degree murder for shooting David Woods "without lawful justification and with the intent to kill David Woods" (720 ILCS 5/9-1(a)(1) (West 2002)). Count II charged defendant with first degree murder for shooting David "knowing such act created a strong probability of death or great bodily harm to David Woods" (*id.* § 9-1(a)(2)). Count III charged defendant with attempted first degree murder for shooting Sheena Woods with the intent to commit first degree murder (*id.* §§ 8-4(a), (c)(1)(D), 9-1(a)(1)).

¶ 4        At trial, defendant testified that, at the time of the incident, he was seated on the passenger side of a car that was stopped at a red light. David was the driver of a van stopped in the next lane. David opened the driver's door and exited the van. Defendant testified that he feared David based on a history of violence between their families and that David appeared to be holding a silver gun. Defendant stated that he immediately put his head down, pulled a gun from his jacket pocket, and

2

fired three or four shots. He fired the shots in quick succession and did not look where he was shooting. David was killed. A stray bullet wounded Sheena, who was a passenger in the van.

¶ 5                                    A. Jury Instructions and Deliberations

¶ 6        As to the first degree murder charge(s) as to David, the jury instructions explained that the State needed to prove the following propositions for either first degree murder or the lesser mitigated offense of second degree murder:

"First Proposition: That the defendant performed the acts which caused the death of David Woods; and

Second Proposition: That when the defendant did so, he intended to kill or do great bodily harm to David Woods;

[or]

he knew such acts created a strong probability of death or great bodily harm to David Woods;

and

Third Proposition: That the defendant was not justified in using the force which he used." See Illinois Pattern Jury Instructions, Criminal, No. 7.06 (4th ed. 2000) (hereinafter IPI Criminal 4th) (titled "Issues Where Jury Instructed On Both First Degree Murder And Second Degree Murder—Belief In Justification").

¶ 7        With regard to the first degree murder charge(s), the instructions further explained that

"[a] mitigating factor exists so as to reduce the offense of first degree murder to the lesser offense of second degree murder if at the time of the killing the defendant believes that circumstances exist which would justify the deadly force he uses, but his belief that

3

such circumstances exist is unreasonable." See IPI Criminal 4th No. 7.05 (titled "Definition Of Mitigating Factor—Second Degree Murder—Belief In Justification").

¶ 8    As to the attempted first degree murder charge as to Sheena, the jury was instructed: "A person commits the offense of attempt first degree murder when he, without lawful justification and *with the intent to kill an individual*, does any act which constitutes a substantial step toward the killing of an individual. The killing attempted need not have been accomplished." (Emphasis added.) See IPI Criminal 4th No. 6.05X (titled "Definition Of Attempt First Degree Murder").

¶ 9    The jury was also instructed as follows:

"To sustain the charge of attempt first degree murder, the State must prove the following propositions:

First Proposition: That the defendant performed an act which constituted a substantial step toward the killing of an individual; and

Second Proposition: That the defendant did so *with the intent to kill an individual*; and

Third Proposition: That the defendant was not justified in using the force he used." (Emphasis added.) See IPI Criminal 4th No. 6.07X (titled "Issues In Attempt First Degree Murder").

See also IPI Criminal 4th No. 24-25.06A (titled "Issue In Defense Of Justifiable Use Of Force").

¶ 10    The trial court gave the jury two sets of verdict forms, one set pertaining to the first degree murder charge(s) and another set pertaining to the attempted first degree murder charge. The first set included the following verdict forms: guilty of first degree murder, not guilty of first degree

murder, and guilty of second degree murder. The court instructed the jury to select and sign only one verdict form that reflected its verdict.

¶ 11    The second set included the following verdict forms: guilty of attempted first degree murder, not guilty of attempted first degree murder, and guilty of aggravated battery of a firearm. The State had not charged defendant with aggravated battery of a firearm. Rather, defense counsel sought instructions on that offense as a lesser-included offense of attempted first degree murder. The court gave that instruction over the State's objection. The court again instructed the jury to select and sign only one verdict form that reflected its verdict.

¶ 12    During deliberation, the jury asked two questions. First, at 1:38 p.m., the jury asked: "Are there only two counts? Number one, murder of David Woods?, number two, attempt murder of Sheena Woods?" The trial court recalled that it had read the three counts during jury selection. The parties agreed to the trial court's answer: "There were three counts, *i.e.*, two counts of murder and one count of attempt murder[.] The two counts of murder have been merged into one series of verdict forms."

¶ 13    Second, at 2:10 p.m., the jury asked: "The attempted murder charge means attempted on whom?" The jury instructions had stated that attempt required "the intent to kill an individual." Defense counsel argued that the court should respond by telling the jury that it meant attempted on Sheena. The State argued that the law reads "on that individual or another" and that the court should respond by telling the jury that the answer to their question is in the instructions. The court responded by telling the jury, "The answer to your questions is in the instructions," over the objection of defense counsel.

5

¶ 14          The jury found defendant guilty of second degree murder as to David and attempted first degree murder as to Sheena. The trial court sentenced defendant to consecutive 30-year prison terms for each offense.

¶ 15                    B. Posttrial Motions, Direct Appeal, and Initial *Pro Se* Postconviction Petition

¶ 16          Defendant filed a posttrial motion, arguing in part that the attempted first degree murder conviction was inconsistent with the second degree murder conviction. The trial court summarily denied the motion in an oral ruling. Defendant did not raise the inconsistent verdict issue in his direct appeal or his initial *pro se* petition for postconviction relief, which was summarily dismissed.

¶ 17                    C. The Instant Successive Postconviction Petition

¶ 18          On June 2, 2015, defendant moved for leave to file a successive postconviction petition, which alleged, *inter alia*, inconsistent verdicts. He asserted cause and prejudice, attaching two letters from appellate counsel showing that counsel advised him not to raise the inconsistent verdict issue. The first letter, dated just prior to defendant's direct appeal, cited *People v. Lopez*, 166 Ill. 2d 441 (1995), and advised that it was "not possible to challenge [defendant's] attempt first degree murder challenge." The second letter, dated prior to defendant's initial *pro se* postconviction petition, more generally advised: "having seen the issues that were and were not raised so far in your case, I suggest you focus on new issues."

¶ 19          The State objected to defendant's motion for leave, arguing that his arguments could have been raised earlier. The trial court granted the State's objection and denied defendant's motion for leave. This court reversed, remanding the matter for the trial court to consider defendant's motion for leave without the State's input.

¶ 20    On May 31, 2018, the trial court granted defendant leave to file a successive postconviction petition and appointed counsel, and in appeal No. 3-21-0426, the State does not argue that defendant failed to satisfy cause and prejudice. On February 28, 2020, counsel filed an amended successive postconviction petition. In it, defendant again argued that his attempted first degree murder conviction was inconsistent with his second degree murder conviction. Defendant explained that, in convicting him of second degree murder, the jury found that he intended to kill and that he also believed, albeit unreasonably, in the need for self-defense. His belief in the need for self-defense did not change between the time he fired the shot which caused David's death and formed the basis of the second degree murder conviction and the time he fired the shot that injured Sheena and formed the basis of the attempted first degree murder conviction. In defendant's view, a defendant acting with the belief, albeit unreasonable, in the need for self-defense does not have the mental state required to support a conviction for attempted first degree murder. Defendant also argued that the court's instructions to the jury and answers to its questions during deliberation (see *supra* ¶¶ 12-13) created jury confusion.

¶ 21    On March 9, 2020, the State moved to dismiss the petition. The State argued that defendant's inconsistent verdict issue was controlled by *People v. Guyton*, 2014 IL App (1st) 110450. The State also argued that the jury question issue was without merit, as the trial court's answers to the jury were legally correct.

¶ 22    On June 4, 2021, the trial court dismissed defendant's inconsistent verdict claim at the second stage, accepting the State's argument that *Guyton* controlled. After protracted discussion and amendment to the pleadings, the trial court allowed the jury question issue to proceed to the third stage.

¶ 23    On September 10, 2021, following an evidentiary hearing, the trial court granted defendant a new trial on the attempted first degree murder charge due to potential jury confusion and "fundamental fairness." Defendant and the State each filed separate appeals, which we consolidate herein for the purposes of decision.

¶ 24                                    II. ANALYSIS

¶ 25    In appeal No. 3-21-0426, defendant challenges the stage-two dismissal of his postconviction petition. Defendant argues that his conviction for attempted first degree murder should be reversed due to (1) inconsistent verdicts and (2) instructional error in that the jury was not properly apprised of the mental state required to prove attempted first degree murder. The instructional error issue, different from the jury question issue in appeal No. 3-21-0423, is an outgrowth of the inconsistent verdict issue. Both issues are subject to *de novo* review. *People v. Price*, 221 Ill. 2d 182, 189 (2006) (inconsistent verdicts); *People v. Parker*, 223 Ill. 2d 494, 501 (2006) (legal propriety of jury instructions). Defendant requests direct relief, as opposed to a remand for stage-three proceedings, because his appeal turns entirely on questions of law. See *People v. Buffer*, 2019 IL 122327, ¶ 47.

¶ 26    Due to the procedural posture of this case, we must consider whether appellate counsel was ineffective for failing to raise either issue and whether successive postconviction counsel provided unreasonable assistance in failing to present the instructional error issue in his amended petition. See *People v. Easley*, 192 Ill. 2d 307, 329 (2000); *People v. Kirk*, 2012 IL App (1st) 101606, ¶ 18. We determine that this procedural bar is cleared. As we will explain, the record shows that appellate counsel affirmatively misstated the law by informing defendant that *Lopez* precludes him from challenging his attempted first degree murder conviction. While counsel is not obligated to brief every conceivable issue, counsel is ineffective when his appraisal of the merits is patently

8

wrong. *Easley*, 192 Ill. 2d at 329. Successive postconviction counsel, in turn, failed to file a certificate pursuant to Illinois Supreme Court Rule 651(c) (eff. Feb. 6, 2013). Rule 651(c) requires that counsel make any amendments necessary to the adequate presentation of a defendant's claim (*Kirk*, 2012 IL App (1st) 101606, ¶ 18), and here, counsel overlooked the instructional error issue that went part and parcel with the inconsistent verdict issue. Even if we were to determine that postconviction counsel's omission did not rise to the level of unreasonable assistance, we would reach the same outcome. We ultimately agree with defendant on the merits of both the inconsistent verdict issue and the instructional error issue. The instructional error issue informs our understanding of the case, and so we address that issue before the inconsistent verdict issue.

¶ 27 In deciding the instructional error issue and the inconsistent verdict issue, we must first determine the requisite mental state for attempted first degree murder. More specifically, we must determine whether the mental state required to prove attempted first degree murder is "intent to kill" or "intent to kill without lawful justification." For the reasons that follow, we hold that the mental state and specific intent required to prove attempted first degree murder is "intent to kill without lawful justification."

¶ 28 A. Mental State Required for Completed Offenses of

First and Second Degree Murder

¶ 29 Before we discuss the nuances that the attempt statute brings to the inconsistent verdict issue, we first consider the completed offenses of first and second degree murder. Also instructive is our supreme court's analysis in *People v. Jeffries*, 164 Ill. 2d 104 (1995), which explains the statutory scheme for first and second degree murder.

¶ 30 The first degree murder statute provides in relevant part:

"(a) A person who kills an individual without lawful justification commits first degree murder if, in performing the acts which cause the death:

(1) he either intends to kill or do great bodily harm to that individual or another, or knows that such acts will cause death to that individual or another; or

(2) he knows that such acts create a strong probability of death or great bodily harm to that individual or another; or

(3) he is attempting or committing a forcible felony other than second degree murder." 720 ILCS 5/9-1(a) (West 2002).

¶ 31 The second degree murder statute provides in relevant part:

"(a) A person commits the offense of second degree murder when he commits the offense of first degree murder as defined in paragraphs (1) or (2) of subsection (a) of Section 9-1 of this Code and either of the following mitigating factors are present:

(1) At the time of the killing [the defendant] is acting under a sudden and intense passion resulting from serious provocation by the individual killed or another whom the offender endeavors to kill, but he negligently or accidentally causes the death of the individual killed; or

(2) At the time of the killing [the defendant] believes the circumstances to be such that, if they existed, would justify or exonerate the killing under the principles stated in Article 7 of this Code, but his [or her] belief is unreasonable." *Id.* § 9-2(a).

¶ 32 In *Jeffries*, the supreme court upheld the constitutionality of the statutory scheme for first and second degree murder and explained how the scheme worked in practice. 164 Ill. 2d at 107. In 1986, the legislature renamed the offense of murder to first degree murder. *Id.* at 111. It

10

abolished the offense of voluntary manslaughter and substituted for it the offense of second degree murder. *Id.*

¶ 33    The court clarified that the mental states required for first and second degree murder are identical: "Illinois law recognizes only the following four mental states: intent, knowledge, recklessness, and negligence. [Citation.] Murder and second degree murder each require the same mental state: either intent or knowledge." (Emphases omitted.) *Id.* at 122.

¶ 34    Because first and second degree murder require the same mental state, second degree murder cannot be considered a lesser included offense of murder. *Id.* Rather, it is more accurately described as a lesser mitigated offense of first degree murder. *Id.* The statute only imposes a burden upon the defendant to establish the existence of a mitigating factor—provocation or imperfect self-defense—once the State has met its initial burden in proving beyond a reasonable doubt all the elements of first degree murder. *Id.* at 113, 119.

¶ 35            B. Mental State for the Inchoate Offense of Attempted First Degree Murder

¶ 36    The mental state required for the inchoate offense of attempted first degree murder is not the same as the mental state required for the completed offense of first degree murder. See, *e.g.*, *Lopez*, 166 Ill. 2d at 449 (the attempt statute requires the intent to commit a specific offense, not simply the intent required to commit the predicate offense). Specifically, the attempt statute provides in relevant part: "A person commits an attempt when, *with intent to commit a specific offense*, he does any act which constitutes a substantial step toward the commission of that offense." (Emphasis added.) 720 ILCS 5/8-4(a) (West 2002).

¶ 37    Our supreme court has addressed the mental state required for attempted first degree murder in a series of cases. First, in *People v. Trinkle*, 68 Ill. 2d 198 (1977), and *People v. Harris*, 72 Ill. 2d 16 (1978), the court expressly held that attempted first degree murder requires a specific

11

intent to kill. Second, in *People v. Barker*, 83 Ill. 2d 319 (1980), the supreme court suggested that "intent to kill" was not enough, and, in our view, in *People v. Reagan*, 99 Ill. 2d 238, 240 (1983), and *Lopez*, 166 Ill. 2d at 449, it implicitly held that the "intent to kill" in attempted murder and attempted first degree murder, respectively, means an "intent to kill without lawful justification."

¶ 38                                      1. *Trinkle* and *Harris*

¶ 39        In *Trinkle*, 68 Ill. 2d at 199, defendant became angered after the bartender refused to serve him, went to a second bar to drink more, returned to the area of the first bar, and shot a handgun through its door. He wounded a patron inside the bar and was charged with attempted murder. *Id.* The indictment and instructions stated that the defendant should be found guilty of attempted murder if he knew that shooting a gun through the door of the bar created a strong probability of death or great bodily harm. *Id.* at 201. The jury found the defendant guilty. *Id.* at 199.

¶ 40        The supreme court explained that the indictment and instructions constituted reversible error. *Id.* at 204. The attempt statute requires that a defendant be guilty of an action "with intent to commit a specific offense." (Internal quotation marks omitted.) *Id.* at 201. Thus, to be guilty of attempted murder, the defendant must have intended to commit the crime of murder. *Id.* at 200. It was not sufficient that the defendant shot a gun " 'knowing such act created a strong probability of death or great bodily harm.' " *Id.* at 201. If that were the test, "then a defendant who committed a battery with knowledge that such conduct could cause great bodily harm would be guilty of attempted murder. But, in law, he would be guilty of aggravated battery, a completely different offense with a different penalty." *Id.* The court concluded with an excerpt from Wayne R. LaFave and Austin W. Scott (Wayne R. LaFave & Austin W. Scott Jr., Handbook on Criminal Law § 59, at 428-29 (1972)), pointing out that the inchoate offense of attempted first degree murder and the completed offense of first degree murder require different mental states:

12

" 'Some crimes, such as murder, are defined in terms of acts causing a particular result plus some mental state which need not be an intent to bring about that result. Thus, if *A*, *B*, and *C* have each taken the life of another, *A* acting with intent to kill, *B* with an intent to do serious bodily injury, and *C* with a reckless disregard of human life, all three are guilty of murder because the crime of murder is defined in such a way [under the criminal scheme upon which LaFave uses for its analysis] that any one of these mental states will suffice. However, if the victims do not die from their injuries, then only *A* is guilty of attempted murder; on a charge of attempted murder it is not sufficient to show that the defendant intended to do serious bodily harm or that he acted in reckless disregard for human life. Again, this is because intent is needed for the crime of attempt, so that attempted murder requires an intent to bring about that result described by the crime of murder (i.e., the death of another).' " *Trinkle*, 68 Ill. 2d at 204.

¶ 41 In *Harris*, 72 Ill. 2d at 18, the supreme court consolidated the appeals of two separate defendants. The jury instructions in each defendant's trial had properly instructed that the crime of attempted first degree murder required the defendant to have intended to commit the crime of murder and perform an act which constitutes a substantial step toward the commission of the crime of murder. *Id.* at 20, 22. However, complimentary instructions then defined murder as requiring a defendant to have killed an individual and, when performing the acts which caused the death, that defendant intended to kill *or* do great bodily harm to that individual (as to defendant A), *or* knew that such acts created a strong probability of death or great bodily harm to that individual (as to defendant B). *Id.*

¶ 42 The supreme court found that the set of instructions was improper, explaining:

13

"Since an attempted murder requires an intent to kill \*\*\*, it is obvious that the 'specific offense' referred to in section 8-4(a) [of the attempt statute] cannot be construed as incorporating the alternative definitions of murder contained in section 9-1(a) in their entirety [such as intending to do great bodily harm or knowing that one's acts create a strong probability of death or great bodily harm]." *Id.* at 24.

It cautioned: "An instruction must make it clear that to convict for attempted murder nothing less than a criminal intent to kill must be shown." *Id.* at 27.

¶ 43    Despite the supreme court's edict in *Harris*, many trial courts persisted in providing attempted first degree murder instructions that included the full definition of murder. See *People v. Velasco*, 184 Ill. App. 3d 618, 632-33 (1989). As a result, the Illinois Pattern Jury Instructions committee amended the instruction definition of attempt. See IPI Criminal 4th No. 6.05; IPI Criminal 4th No. 6.05X. In attempted first degree murder cases, courts were directed to no longer give the general definition of attempt, which had provided: "A person commits the offense of attempt when he, with the *intent to commit the offense of* ___, does any act which constitutes a substantial step toward the commission of the offense of ___. The offense attempted need not have been committed." (Emphasis added.) Illinois Pattern Jury Instructions, Criminal, No. 6.05 (2d ed. 1981) (hereinafter IPI Criminal 2d ) (titled "Definition of Attempt"). Instead, they were to give a definition of attempt specially crafted for the crime of attempted first degree murder: "A person commits the offense of attempt first degree murder when he, [without lawful justification and] with the *intent to kill an individual*, does any act which constitutes a substantial step toward the killing of an individual. The killing attempted need not have been accomplished." (Emphasis added.) IPI Criminal 4th No. 6.05X.

14

¶ 44 Replacing "intent to commit the offense of [murder]" in the original definition instructions for attempt (IPI Criminal 2d No. 6.05) with "intent to kill" in the amended definition instructions for attempted first degree murder (IPI Criminal 4th No. 6.05X), removed the risk that a jury would convict a defendant charged with attempted first degree murder who did not have an intent to kill. However, in solving one problem, the committee created another. While the committee purported to follow *Harris* in specifying that a defendant have an "intent to kill," *Harris* in fact had directed that instructions in attempt murder cases make clear that a defendant have a "criminal intent to kill." *Harris*, 72 Ill. 2d at 27. As the supreme court would go on to suggest in *Barker*, "intent to kill" is not enough to satisfy the attempt statute and show that a defendant had the intent to commit the specific offense of first degree murder.

¶ 45                    2. *Barker*, *Reagan*, and *Lopez*

¶ 46 In *Barker*, 83 Ill. 2d at 323, the defendant was charged, *inter alia*, with attempted first degree murder. The indictment provided that he " 'knowingly with *intent to commit the offense of murder*, did acts which constitute[d] a substantial step towards the commission of murder, to wit: firing a sawed-off shotgun in the direction of [two police officers, neither of whom died].' " Emphasis added.) *Id.* The defendant pleaded guilty, but later sought to withdraw his plea. *Id.* at 324. He argued that the indictment to which he pleaded guilty was fatally defective for failing to allege an essential element of the offense, *i.e.*, an intent to kill. *Id.* at 322-23.

¶ 47 The supreme court disagreed, explaining that the indictment was adequate. *Id.* at 326-27. Because the attempt statute requires an intent to commit a specific offense and the indictment charged that the defendant intended to commit the specific offense of murder, the indictment complied with the literal requirements of the statute. *Id.* at 326. The court noted that, unlike in *Trinkle* and *Harris*, the case before it involved a guilty plea and an indictment, not jury instructions.

15

*Id.* at 325. Accordingly, there was no danger that a jury would convict a defendant who did not have the intent to kill. *Id.* The erroneous instruction defining the alternative definitions of murder, including intent to do great bodily harm or knowledge that one's acts create a strong probability of death or great bodily harm, was not present in *Barker*. *Id.* Further:

"Admittedly the indictment could have been in more detail and, in addition to the two allegations it now contains, could have further stated that the acts were performed with the intent to kill. However, this further allegation would have been redundant. Under section 9-1(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 9-1(a)) a person may commit murder without specifically intending to kill anyone. However, since all murders involve a killing, a person cannot intend to commit murder without intending to kill. It is not logical to argue that an indictment charging one with the intent to commit murder does not charge that he had the intent to kill. Since the indictment has charged that the defendant, with the intent to commit murder, did certain acts, it is unnecessary to again charge that the acts he performed, as a substantial step toward the commission of that offense, were committed with the specific intent to kill. *If the indictment had only charged the defendant with the intent to kill and did not include the allegation that the defendant acted with the intent to commit murder, it would have been defective under section 8-4(a) of the Criminal Code, quoted above, in that it would not have charged the defendant with an intent to commit a specific offense. The act of killing, or even intending to kill, is not necessarily a criminal offense (self-defense, for example).*" (Emphasis added.) *Id.* at 326-27.

¶ 48    Thus, in *Barker*, the language in the challenged indictment mirrored the language in the original IPI Criminal 2d No. 6.05 defining attempt. *Id.* at 323. In the above italicized quote, the *Barker* court stated that the terms "intent to commit murder" and "intent to kill" are *not*

16

interchangeable, and it is not accurate to replace the term "intent to commit murder" with "intent to kill." *Id.* at 327. However, that is exactly what the committee did in amending the instructions to create IPI Criminal 4th No. 6.05X, which we discuss later (*infra* ¶ 61).

¶ 49      In *Reagan*, 99 Ill. 2d at 240, and *Lopez*, 166 Ill. 2d at 448, our supreme court considered whether the crimes of attempted voluntary manslaughter and attempted second degree murder, respectively, have ever existed in Illinois. The supreme court determined that they have not, explaining in the process that the "intent to kill" required to be convicted of attempted voluntary manslaughter and attempted second degree murder, if those crimes existed, meant the "intent to kill without lawful justification." *Reagan*, 99 Ill. 2d at 240; *Lopez*, 166 Ill. 2d at 448-49.

¶ 50      In *Reagan*, the defendant engaged in a shootout with three police officers, none of whom were killed. *People v. Reagan*, 111 Ill. App. 3d 945, 947 (1982). The trial court instructed the jury on attempted murder and attempted voluntary manslaughter (imperfect self-defense). *Id.* The jury acquitted defendant of attempted murder and convicted him of attempted voluntary manslaughter (imperfect self-defense) and three counts of armed violence. *Reagan*, 99 Ill. 2d at 239.

¶ 51      The supreme court reversed the conviction for attempted voluntary manslaughter, holding that no such crime existed. *Id.* at 241. The court first defined the crimes of voluntary manslaughter and attempt, respectively. *Id.* at 239-40. It noted that " '[a] person who intentionally or knowingly kills an individual commits voluntary manslaughter if at the time of the killing he believes the circumstances to be such that, if they existed, would justify or exonerate the killing under the principles stated in Article 7 of this Code, but his belief is unreasonable.' " *Id.* at 239 (quoting Ill. Rev. Stat. 1979, ch. 38, ¶ 9-2(b)). Attempt, in turn, requires an " 'intent to commit a specific offense.' " *Id.* (quoting Ill. Rev. Stat. 1979, ch. 38, ¶ 8-4(a)). It then explained:

17

"*The requirement of the attempt statute is not that there be an intent to kill, but that there be an intent to kill without lawful justification.* If *** defendant at the time of the shooting believed the circumstances to be such that if they existed would justify the killing, then there was no intent to commit an offense.

We agree with the appellate court that 'there is no crime of attempted voluntary manslaughter under section 9-2(b). To commit an attempted voluntary manslaughter, the defendant could not merely have an intent to kill, for that is not a crime. [*Barker* , 83 Ill. 2d 319 (1980).] The defendant would have to specifically intend to kill with an unreasonable belief in the need to use deadly force in self-defense. As the State concedes, it is impossible to intend an unreasonable belief. If a defendant intended to kill with the knowledge that such action was unwarranted, he has intended to kill without lawful justification and could be prosecuted for attempted murder. *In the case at bar, the defendant intended to defend himself. Although his belief in the need to defend himself or in the need to use deadly force was unreasonable, his intent was not to commit a crime*. His intent was to engage in self-defense, which is not a criminal offense.' 111 Ill. App. 3d 945, 950-51.' " (Emphases added.) *Id.* at 240-41.

In *Lopez*, 166 Ill. 2d at 442, the supreme court consolidated the appeals of two defendants. One defendant was convicted of attempted first degree murder and armed violence. *Id.* He had asked for and was denied an instruction on the crime of attempted second degree murder (provocation). *Id.* The other defendant was also convicted of, *inter alia*, attempted first degree murder and armed violence. *Id.* at 442-43. He had asked for and was denied an instruction on the crime of attempted second degree murder (imperfect self-defense). *Id.* at 443.

¶ 53    The supreme court agreed that the instructions were properly denied. *Id.* at 451. Just as there was no such crime as attempted voluntary manslaughter, there was no crime of attempted second degree murder. *Id.* at 448, 451. In analyzing the question, the court first reviewed the principles set forth in *Jeffries*, 164 Ill. 2d at 122, which, again, had held that the completed offenses of first and second degree murder require the same mental state. *Lopez*, 166 Ill. 2d at 447.

¶ 54    The supreme court next considered the mental state issue in determining that the inchoate offense of attempted second degree murder did not exist. *Id.* at 447-48. In contrast to the completed offenses of first and second degree murder, which allow for the mental state of intent *or* knowledge, the inchoate offenses of attempted first degree murder and attempted second degree murder, if it existed, would require the specific intent to kill. *Id.* at 445-46. The court noted, however, that simply intending to kill is not necessarily a crime. *Id.* at 446, 448 (discussing *Barker*, 83 Ill. 2d at 327, and *Reagan*, 199 Ill. 2d at 240). As the attempt statute requires the intent to commit a specific crime, "the intent required for attempted second degree murder, if it existed, would be the intent to kill *without lawful justification*, plus the intent to have a mitigating circumstance present." (Emphasis added.) *Id.* at 448. The court reasoned, as in *Reagan*, that one cannot intend the mitigating circumstances of a sudden and intense passion nor can one intend the unreasonable belief in the need to use deadly force. *Id.* Also, concerning the mitigating factor of imperfect self-defense, one cannot intend to kill unlawfully while at the same time intend to use justifiable deadly force. *Id.* at 448-49.

¶ 55    Accordingly, the supreme court expressly rejected the notion that the specific intent required for attempted second degree murder is simply intent to kill:

    "[W]hile *** legal commentators have argued [citations] that the specific intent required for attempted second degree murder is simply the intent to kill, their assertion is without

19

merit. These arguments fail to consider the specific language of Illinois' attempt statute, which plainly requires the intent to commit a specific offense, not simply the intent required to commit the predicate offense. Thus, our decision is based on the wording of our attempt statute rather than some notion of how the crime of attempt should be defined." *Id.* at 449.

¶ 56　　　　Finally, the supreme court addressed the defendants' argument that the failure to recognize the crime of attempted second degree murder results in the possibility that a defendant would be sentenced to a greater term of imprisonment if the victim lives than if the victim dies. *Id.* at 450. To be sure, attempted first degree murder is a Class X felony punishable by a term of 6 to 30 years' imprisonment, without the possibility of probation. *Id.* However, second degree murder is a Class 1 felony punishable by a term of 4 to 15 years' imprisonment, with the possibility of probation. *Id.* The court appeared to accept the defendants' premise that it is possible for a defendant acting subject to alleged mitigating factors to nevertheless have the mental state required to be convicted of attempted first degree murder in certain unspecified circumstances. Even so, the court explained that it would not override the legislature with respect to a sentencing disparity absent a determination that the punishment was cruel, degrading, or so disproportionate to the offense committed as to shock the moral sense of the community. *Id.* at 450-51.

¶ 57　　　　We recognize that *Reagan* and *Lopez* addressed whether the crime of attempted voluntary manslaughter and attempted second degree murder, respectively, were viable offenses. Answering that question required the supreme court to determine the mental state required to be convicted of voluntary manslaughter and attempted *second* degree murder, if those crimes existed. The instant case calls upon us to answer a slightly different question, namely, what is the mental state required for attempted *first degree* murder. Still, we determine that the only reasonable reading of *Reagan*

20

and *Lopez*, and the leading cases upon which they relied, is that the mental state required for attempted first degree murder is *intent to kill without lawful justification*, not simply intent to kill.

¶ 58    As firmly established, the attempt statute requires the intent to commit a specific offense. *Id.* at 447-48. The mere intent to kill is not necessarily a crime. *Barker*, 83 Ill. 2d at 327. If a defendant believed that circumstances were such that, if they existed, would justify a killing, then there would be no intent to commit the offense of first degree murder. *Reagan*, 99 Ill. 2d at 241. If, in contrast, defendant intended to kill with the knowledge that such act was unwarranted, then " 'he *** intended to kill without lawful justification and could be prosecuted for attempted murder.' " *Id.* at 240.

¶ 59    The State at times seems to argue that the specific intent required for attempted first degree murder is simply intent to kill, but this argument fails for the same reason the supreme court rejected the argument that the specific intent required for attempted second degree murder is simply intent to kill—"These arguments fail to consider the specific language of Illinois' attempt statute, which plainly requires the intent to commit a specific offense, not simply the intent required to commit the predicate offense." *Lopez*, 166 Ill. 2d at 449. In the context of the attempt statute, a defendant cannot intend to commit the specific offense of first degree murder unless he intends to kill without lawful justification.

¶ 60                                  C. Jury Instructions

¶ 61    We next consider defendant's argument that the People's instruction Nos. 15 and 16, modeled after IPI Criminal 4th Nos. 6.05X, 6.07X, and 24-25.06A, regarding attempted first degree murder are incorrect. Again, those instructions provided that "[a] person commits the offense of attempt first degree murder when he, without lawful justification and with the intent to

21

kill an individual, does any act which constitutes a substantial step toward the killing of an individual," and that,

> "[t]o sustain the charge of attempt first degree murder, the State must prove *** [t]hat the defendant performed an act which constituted a substantial step toward the killing of an individual; and *** [t]hat the defendant did so with the intent to kill an individual; and *** [t]hat the defendant was not justified in using the force he used." See IPI Criminal 4th No. 6.05X; IPI Criminal 4th No. 6.07X; IPI Criminal 4th No. 24-25.06A.

We agree with defendant's observation that objectively acting without lawful justification, as the instructions currently require, is different than intending to kill without lawful justification. Objectively acting without lawful justification is not a mental state or a description of a specific intent. The current instructions fail to inform the jury that the mental state required to prove attempted first degree murder is intent to kill without lawful justification. We have noted that, per *Barker*, 83 Ill. 2d at 327, the terms "intent to commit murder" and "intent to kill" are not interchangeable. We have also held that the specific intent required for attempted first degree murder is intent to kill without lawful justification, not simply intent to kill. Informing the jury that it need find only an intent to kill, not an intent to kill without lawful justification, enabled the jury to simultaneously find that defendant committed attempted first degree murder, which requires an intent to kill without lawful justification, even though it also found that defendant believed in the need for self-defense. We address this point next.

¶ 62                                    D. Inconsistent Verdicts

¶ 63            Defendant asserts that the mental state required for attempted first degree murder, intent to kill without lawful justification, is inconsistent with the jury's determination that at, the time of

22

the shooting, he believed, albeit unreasonably, in the need for self-defense. Our supreme court has explained:

> " 'Legally inconsistent verdicts occur when an essential element of each crime must, by the very nature of the verdicts, have been found to exist and to not exist even though the offenses arise out of the same set of facts.' [Citation.] When offenses involve mutually inconsistent mental states, a determination that one mental state exists is legally inconsistent with a determination of the existence of the other mental state." *Price*, 221 Ill. 2d at 188-89 (quoting *People v. Frieberg*, 147 Ill. 2d 326, 343 (1992)).

¶ 64    In this case, the State concedes that defendant's mental state and intent did not differ when firing the shot that killed David, resulting in the second degree murder conviction, and when firing the shot that injured Sheena, resulting in the attempted first degree murder conviction. Indeed, defendant fired four shots in rapid succession, not looking where he fired, and the State never tried to distinguish defendant's mental state and intent *vis-à-vis* each specific shot. In conjunction with the second degree murder conviction, the jury determined that, when firing the shot that killed David, defendant had a belief in the need for self-defense, although unreasonable. Therefore, when firing the shot that injured Sheena, defendant also had a belief in the need for self-defense, although unreasonable. We know, given the jury instructions regarding attempted first degree murder and the jury's verdict of guilty as to attempted first degree murder, that the jury determined that defendant intended to kill when he fired the shot that injured Sheena. However, per *Barker*, simply intending to kill is not enough. Per *Reagan* and *Lopez*, attempted first degree murder requires the specific intent to kill without lawful justification. Defendant cannot have intended to kill without lawful justification where he also believed, albeit unreasonably, in the need for self-defense. *Reagan*, 99 Ill. 2d at 240.

23

¶ 65     Accordingly, we conclude that defendant's conviction for attempted first degree murder is inconsistent with his conviction for second degree murder, where the parties agree that defendant's mental state and intent did not change when committing the acts which formed the basis of each offense.

¶ 66     We recognize that the jury's finding, made in conjunction with the second degree murder conviction, that defendant believed in the need for self-defense is not a "mental state" but, rather, it is a mitigating factor making second degree murder a lesser *mitigated* offense of first degree murder. See *Jeffries*, 164 Ill. 2d at 123. In labeling the belief in the need for self-defense a mitigating factor, *Jeffries* observed that the court's earlier holding in *People v. Hoffer*, 106 Ill. 2d 186, 194-95 (1985), was implicitly overruled. *Jeffries*, 164 Ill. 2d at 121-22 (citing *People v. Wright*, 111 Ill. 2d 18, 28 (1986)). *Hoffer* had incorrectly held that a belief in the need for self-defense was a "mental state" such that voluntary manslaughter was a lesser-*included* offense of murder. *Hoffer*, 106 Ill. 2d at 194-95. However, *Hoffer* had also held that the defendant's convictions for murder and voluntary manslaughter were legally inconsistent because a defendant could not both believe and not believe that circumstances existed justifying the use of force. *Id.* In context, *Jeffries*'s criticism of *Hoffer* was not directed at the gravamen of *Hoffer*'s inconsistent verdict analysis and does not undermine our ruling. *Jeffries* was not an inconsistent verdict case and, just months after *Jeffries*, the supreme court was squarely faced with the question of whether a jury's determination that a mitigating factor both did and did not exist rendered a verdict inconsistent, which the court answered in the affirmative. See *People v. Porter*, 168 Ill. 2d 201, 214 (1995). That the mitigating factor of provocation in *Porter* was not technically a mental state did not stop the supreme court from holding that the defendant's convictions for first and second degree murder were legally inconsistent, as the defendant could not have acted both with and

24

without provocation in murdering the victim. *Id.* Also just months after *Jeffries*, the supreme court held that the belief in the need for self-defense is a finding that cannot coexist with the intent to kill without lawful justification. See *Lopez*, 166 Ill. 2d at 448.

¶ 67 Simply put, the jury's finding that defendant believed in the need for self-defense is a factual determination that precludes a finding of guilt for attempted first degree murder.

¶ 68 We recognize that our holding is at odds with the First District's ruling in *Guyton*, 2014 IL App (1st) 110450,[1] which we conclude was incorrectly decided. The facts in *Guyton* are on all fours with those in the instant case. In *Guyton*, the defendant testified that his vehicle collided with a van. *Id.* ¶ 20. He argued with the van's driver and passenger. *Id.* ¶ 21. The passenger exited the van and threatened the defendant with a gun if the defendant did not pay for the resulting damage. *Id.* The passenger told the defendant that the dispute was not over. *Id.* ¶ 22. The defendant parked his car, took his gun from his car, and began to walk home. *Id.* The defendant saw the van approach. *Id.* The defendant saw the passenger reach down with his right arm, and the defendant thought that the passenger was going to shoot him. *Id.* The defendant shot at the van and ran away. *Id.* The driver was killed, and the passenger suffered a minor injury. *Id.* ¶¶ 4, 15.

¶ 69 The jury convicted defendant of second degree murder as to the driver, attempted first degree murder as to the passenger, and aggravated discharge of a firearm. *Id.* ¶ 1. The defendant argued on appeal that his conviction for second-degree murder shows that the jury determined that he believed in the need for self-defense, although his belief was unreasonable. *Id.* ¶¶ 35, 39.

---

[1] As the State notes, the Second District accepted *Guyton* in an unpublished order. *People v. Russell*, 2022 IL App (2d) 200119-U. However, *Russell* cited *Guyton* in the context of holding that trial counsel did not provide ineffective assistance for failing to ask for instructions concerning imperfect self-defense in an attempted first degree murder case. *Id.* ¶ 55. *Russell* correctly observed that attempted first degree murder cannot be mitigated by imperfect self-defense, and it could have relied exclusively on *Lopez* for that principle. *Id.* ¶ 49. Unlike *Guyton* or the instant case, *Russell* does not involve a defendant convicted of both attempted first degree murder and second degree murder.

25

Defendant further argued that his mental state did not differ when firing the shot that killed the driver and resulted in his second degree murder conviction (which would have required an intent to kill, but *no*t an intent to kill without lawful justification) and the shot that injured the passenger and resulted in his attempted first degree murder conviction (which would have required an intent to kill without lawful justification). *Id.* ¶ 40. Therefore, he urged that he could not have had the requisite specific intent to be convicted attempted first degree murder and that conviction should be vacated. *Id.* ¶ 35.

¶ 70        The *Guyton* court held that the verdicts were not inconsistent:

> "*There is no difference between the mental states required to prove attempted first degree murder and second degree murder*. First degree murder and second degree murder share the same elements, including the same mental states, but second degree murder requires the presence of a mitigating circumstance. *Jeffries*, 164 Ill. 2d at 121-22. The presence of a mitigating factor does not negate the mental state of murder because mitigating factors are not elements of the crime. *Jeffries*, 164 Ill. 2d at 121." (Emphasis added.) *Id.* ¶ 41.

¶ 71        The *Guyton* court agreed with the defendant's premise that, in committing the acts that formed the basis of each offense, defendant had the same unreasonable belief in the need for self-defense. *Id.* ¶ 46. It reasoned, however, that because the offense of attempted second degree murder does not exist, the jury was powerless to mitigate the attempted first degree murder conviction based on its determination that defendant had an unreasonable belief in the need for self-defense. *Id.*

¶ 72        The *Guyton* court appeared to recognize a sense of unfairness in this, referencing the dissent in *Lopez* where "Justice McMorrow predicted the precise conundrum presented here:

absent a crime of attempted second degree murder, a defendant could be punished more severely if the victim lives than if the victim dies." *Id.* ¶ 43. The *Guyton* court stated that, in 2010, the legislature addressed the sentencing disparity between attempted first degree murder and second degree murder, but only as to second degree murder (provocation) not second degree murder (imperfect self-defense). *Id.* ¶ 44. The legislature added subsection (c)(1)(E) to section 804 (720 ILCS 5/8-4(c)(1)(E) (West 2010); see Pub. Act 96-710 (eff. Jan. 1, 2010)) to the sentencing provisions in the attempt statute, which provided that if, at sentencing, the defendant is able to prove provocation by a preponderance of the evidence, then the sentence for the attempted first degree murder is a Class 1 felony rather than a Class X felony. *Guyton*, 2014 IL App (1st) 110450, ¶ 44.

¶ 73    The *Guyton* court reasoned that the legislature could have added a similar provision addressing the sentencing disparity between attempted first degree murder and second degree murder (imperfect self-defense), but it chose not to. *Id.* ¶ 45. It reasoned that this suggested the legislature's agreement with the supreme court's holding in *Lopez* that the crime of attempted first degree murder cannot be mitigated to attempted second degree murder. *Id.* The *Guyton* court added, "[s]hould our presumption be incorrect, the legislature again has the opportunity to consider whether subsection 8-4(c)(1)(E) should be amended to allow proof of imperfect self-defense as a basis for mitigation of a sentence for the crime of attempted murder." *Id.*

¶ 74    Thus, the *Guyton* court's analysis may be thought of in two parts: (1) its conclusion that the verdicts were not inconsistent and (2) its recognition that the crime of attempted first degree murder cannot be mitigated by a belief, albeit unreasonable, in the need for self-defense (citing *Lopez*, the *Lopez* dissent, and the legislature's apparent response to the *Lopez* dissent).

¶ 75        The *Guyton* court's conclusion that the verdicts were not inconsistent is set forth in a single sentence without citation to authority: "There is no difference between the mental states required to prove *attempted* first degree murder and [completed] second degree murder." (Emphasis added.) *Id.* ¶ 41. The court subsequently cites *Jeffries* (*id.* (citing *Jeffries*, 164 Ill. 2d at 121-22.)) but its reliance on *Jeffries* is misplaced. *Jeffries* compared the mental states of the completed offenses of first and second degree murder, finding them to be the same. *Jeffries* did not address the mental state and intent required for the inchoate offense of attempted first degree murder.

¶ 76        The holding in *Jeffries* that the mental state for first and second degree murder are the same cannot be used to support the *Guyton* court's assertion that there is no difference between the mental states required to prove attempted first degree murder and second degree murder. The mental state required to prove attempted first degree murder cannot be substituted for the mental state required to prove first degree murder. The supreme court has repeatedly indicated that the mental state required to prove an inchoate offense is not the same as the mental state required to prove the completed offense. See, *e.g.*, *Lopez*, 166 Ill. 2d at 449 ("the specific language of Illinois' attempt statute *** plainly requires the intent to commit a specific offense, not simply the intent required to commit the predicate offense"); *Reagan*, 111 Ill. App. 3d at 950 ("The confusion we see here is the result of two different intent requirements: The intent necessary to commit a completed offense differs from the specific intent necessary to commit the inchoate offense of attempt."), *aff'd* 99 Ill. 2d 238; *Barker*, 83 Ill. 2d at 326-27; *Harris*, 72 Ill. 2d at 23, 27-28; *Trinkle*, 68 Ill. 2d at 204. As discussed, the specific intent required to prove attempted first degree murder is intent to kill without lawful justification. See *Lopez*, 166 Ill. 2d at 448-49; *Reagan*, 99 Ill. 2d at 240. The mental state required to prove the completed offenses of first degree murder is simply the intent to kill (setting aside for the purposes of this case the alternative definitions of murder

28

contained in section 9-1(a), such as intending to do great bodily harm or knowing that one's acts create a strong probability of death or great bodily harm). See *Harris*, 72 Ill. 2d at 27; *Trinkle*, 68 Ill. 2d at 201. The mental state required to prove the completed offense of second degree murder is the same, intent to kill. *Jeffries*, 164 Ill. 2d at 122. Emphatically, the mental state required to prove attempted first degree murder and the completed offense of second degree murder are *not*, as the *Guyton* court asserts, the same.

¶ 77        We next turn to the second part of the *Guyton* court's analysis, its recognition that the crime of attempted first degree murder cannot be mitigated—either at the conviction stage as logically impossible or, as is legislatively available for provocation, at the sentencing stage—by a belief, albeit unreasonable, in the need for self-defense. A more critical analysis demonstrates these observations to be irrelevant to the question posed by the *Guyton* defendant: what is the specific intent required to be convicted of attempted first degree murder and is it legally inconsistent with the jury's determination that, at the time of the offense, defendant believed, albeit unreasonably, in the need for self-defense? As we have delineated above, the mental state required to be convicted of attempted first degree murder is intent to kill without lawful justification and that mental state is indeed inconsistent with a jury's determination that a defendant believed in the need for self-defense, albeit unreasonably.

¶ 78        We agree with defendant that the best explanation for the legislature's failure to address a sentencing mitigation for a defendant who attempted to commit first degree murder yet who also believed, albeit unreasonably, in the need for self-defense, is that there is no such legally convicted defendant. Such a defendant cannot properly be convicted of attempted first degree murder in the first place.

29

¶ 79 Finally, we note that at oral argument the State agreed that a defendant cannot have the specific intent to murder a victim if the defendant believed he was legally justified. Nevertheless, the State maintains that, per *Guyton*, the latter part of the foregoing statement, belief in justification, is but a mitigating factor which could not be considered until after the jury found the elements of first degree murder to be satisfied. Thus the State argues that considering this mitigating factor in the context of attempted first degree murder "puts the cart before the horse." The State continues that, because the crime of attempted first degree murder cannot be mitigated, this court should not consider defendant's belief in the need for self-defense.

¶ 80 The State's argument fails to recognize that the completed offenses of first and second degree murder are not at issue in this appeal. Unlike those offenses, the inchoate offense of attempted first degree murder does not require a two-step analysis. The jury's determination that defendant had a belief in the need for self-defense, no matter how characterized, makes it legally impossible to establish that defendant intended to kill without lawful justification. This case is not about mitigating the offense of attempted first degree murder. As defendant readily agrees, that is not possible. Rather, this case is about whether defendant may be properly convicted of attempted first degree murder where the jury has found him guilty of second degree murder for a series of shots fired where his intent did not change. He cannot.

¶ 81                                     E. Remedy

¶ 82 Typically, when a jury returns an inconsistent verdict, the trial court should send the jury back to deliberate further to resolve the inconsistency. *Porter*, 168 Ill. 2d at 214. If the trial court fails to do so, the remedy is usually to reverse and remand for a new trial on all counts. *Id.* at 214-15. The State makes no meaningful argument as to remedy, but it states in conclusory fashion that the remedy should be to remand for a new trial. It does not specify whether it favors a remand for

30

a new trial on all charges or just on the attempted first degree murder charge. Defendant urges that his second degree murder conviction as to David should stand and that his conviction for attempted first degree murder as to Sheena should be outright reversed with no new trial.

¶ 83    This case is different from a typical inconsistent verdict case, where the jury finds that an essential element or mental state both exists and does not exist. In *Porter*, again, the jury found that defendant acted both with provocation and without provocation when he murdered the victim. *Id.* at 214. In contrast, here, the jury did not find that defendant acted both with a belief in the need for self-defense and with an intent to kill without lawful justification when firing the series of shots at the van. Rather, intent to kill without lawful justification is what the jury was required to find to support a conviction for attempted first degree murder but, as explained, the jury instructions for attempted first degree murder as to Sheena merely asked the jury if defendant objectively lacked lawful justification when he fired the shots. Therefore, the jury never made a finding as to Sheena in contradiction of its finding, as to David, that defendant believed in the need for self-defense when he fired the shots. As such, we see no reason to disturb defendant's conviction for second degree murder as to David. The findings substantiating that conviction were not contradicted and it would violate principles of double jeopardy to subject defendant to the chance that a new jury might convict him of the completed offense of first degree murder as to David. See, *e.g.*, *People v. Daniels*, 187 Ill. 2d 301, 321 (1999).

¶ 84    Moreover, once the second degree murder conviction is locked in place, we see no purpose in remanding for a new trial as to the attempted first degree murder charge. As we have explained, a jury cannot legally find a defendant to have intended to kill without lawful justification when he believed in the need for self-defense. As the State concedes, a jury has already determined that defendant believed in the need for self-defense when he fired four shots in quick succession. When

31

a trier of fact determines an issue of ultimate fact as part of a valid and final judgment—here the second degree murder conviction—that issue cannot be litigated again between the same parties in any future lawsuit. *Id.* at 320-21.

¶ 85    For these reasons, we outright reverse the attempted first degree murder conviction, without remand for a new trial. Nor do we remand for a jury to decide whether defendant is guilty of aggravated battery with a firearm. The State never charged defendant with aggravated battery with a firearm. This was a lesser included instruction provided to the jury over the State's objection that does not survive our outright reversal of the greater offense.

¶ 86    In appeal No. 3-21-0426, we outright reverse defendant's attempted first degree murder conviction. Appeal No. 3-21-0423 is rendered moot and, as such, dismissed. As our analysis has turned entirely on questions of law, there is no need for a remand for stage-three postconviction proceedings. See *Buffer*, 2019 IL 122327, ¶ 47.

¶ 87                                    III. CONCLUSION

¶ 88    The judgment of the circuit court of Will County is reversed as to the attempted first degree murder conviction. (Defendant's conviction and sentence for second degree murder were not challenged in either appeal No. 3-21-0426 or No. 3-21-423 and remain in force.)

¶ 89    No. 3-21-0423, Appeal dismissed.

¶ 90    No. 3-21-0426, Reversed.

*People v. Guy*, 2023 IL App (3d) 210423

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Will County, No. 02-CF-1974; the Hon. David M. Carlson, Judge, presiding. |
| **Attorneys for Appellant:** | James W. Glasgow, State's Attorney, of Joliet (Patrick Delfino, Thomas D. Arado, and Justin A. Nicolosi, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| **Attorneys for Appellee:** | James E. Chadd, Santiago A. Durango, and Dimitri Golfis, of State Appellate Defender's Office, of Ottawa, and Zachary Pollack, of Pollack Law Group, Ltd., of Joliet, for appellee. |