2025 IL 129967

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

---

(Docket No. 129967)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v.
TRAVARIS T. GUY, Appellee.

*Opinion filed April 24, 2025.*

JUSTICE NEVILLE delivered the judgment of the court, with opinion.

Justices Overstreet, Holder White, Cunningham, and Rochford concurred in the judgment and opinion.

Chief Justice Theis dissented, with opinion.

Justice O'Brien took no part in the decision.

## OPINION

¶ 1    The substantive issue in this appeal is which specific intent must the State prove in an attempted first degree murder case: (1) intent to kill or (2) intent to kill without

lawful justification. Defendant, Travaris T. Guy,[1] was convicted of attempted first degree murder based on a jury instruction that required the jury only to find that Guy acted with the intent to kill. The jury simultaneously found, in convicting Guy of second degree murder, that Guy had the subjective belief that his actions were lawfully justified. After not raising the issue on direct appeal or in an initial postconviction petition, Guy filed a successive postconviction petition raising an inconsistent verdict issue and a claim of ineffective assistance of counsel.

¶ 2        The Will County circuit court denied Guy relief on the inconsistent verdict claim but granted Guy a new trial on a separate claim. The appellate court reversed Guy's attempted first degree murder conviction outright, holding that (1) the attempted first degree murder instruction misstated the law, (2) Guy's conviction for attempted first degree murder was inconsistent with his conviction for second degree murder, and (3) the jury's finding that Guy believed in the need for self-defense was a factual determination that precluded a finding of guilt for attempted first degree murder. 2023 IL App (3d) 210423, ¶¶ 61, 65, 67, 85.

¶ 3        We allowed the State's petition for leave to appeal, which requested that we take the case "on the important issue of the mental state requirement for attempt first degree murder." See Ill. S. Ct. R. 315 (eff. Oct. 1, 2021). For the following reasons, we affirm the judgment of the appellate court in part, reverse in part, and remand to the circuit court to sentence Guy on the lesser-included offense of aggravated battery with a firearm.

¶ 4                                I. BACKGROUND

¶ 5        Guy was charged with three felony counts based on the November 1, 2002, shooting of David Woods Sr. and Sheena Woods.[2] Counts I and II charged Guy with the first degree murder of David Sr. 720 ILCS 5/9-1(a)(1), (2) (West 2002). Count III charged Guy with the attempted first degree murder of Sheena. *Id.* §§ 8-

---

[1]Because there are multiple individuals with the last name Guy, we will refer to defendant as Guy and Ronald Guy as Ronald.

[2]Because there are multiple individuals with the last name Woods, we will refer to David Woods Sr. as David Sr., Sheena Woods as Sheena, and David L. Woods as David L.

4(a), 9-1(a)(1).

¶ 6                                    A. Trial

¶ 7        Guy's jury trial commenced on April 5, 2005. Trial testimony established that there were four individuals in David Sr.'s van on the day of the shooting: David Sr. was in the driver's seat, David L. Woods was in the passenger seat, Sheena was in the back seat behind the driver, and Constance Daniels was in the back seat behind David L. Sheena was David Sr.'s daughter, and David L. was David Sr.'s nephew. Constance was David L.'s girlfriend. Guy was a passenger in a Chevy Malibu driven by Corzell Cole. At midday on November 1, 2002, the vehicles arrived at the intersection of North Midland Avenue and West Jefferson Street in Joliet, Illinois.

¶ 8        It was undisputed at trial that Guy fired the shots that killed David Sr. and injured Sheena. The disputed issue in the case was whether Guy's actions were lawfully justified. There was extensive testimony that the Guy and Woods families were in a serious feud. Both parties introduced evidence tending to show that the other family was the aggressor or instigator in the feud.

¶ 9        When discussing the shooting, Constance testified that she recognized Cole and Guy and told the rest of the individuals in the car, "there they go." Constance testified that Guy started shooting before David Sr. saw them. Sheena testified that David Sr. opened his door to look for the person Constance was referring to because his window did not work. Sheena continued that, when David Sr. looked out, Guy started shooting. David Sr. then fell toward the back of the van, where he was bleeding from his shoulder and mouth. Sheena was also struck by the gunfire. Each occupant in the van with David Sr. testified that neither David Sr. nor any of the other occupants in the van possessed a firearm at the time of the shooting.

¶ 10       Guy testified that he received the gun used in the shooting on October 31, 2002, from his cousin Ronald Guy. Ronald told Guy that he needed the gun because Ronald had just been shot, Ronald was "into it" with the Woods family, the Woods family knew where Guy's girlfriend lived, and the Woods family lived right down the street from Guy's girlfriend's home. Ronald told Guy that "they were going to try to get [Guy]."

¶ 11 Guy testified that on the day of the shooting, he was riding with Cole when they stopped at an intersection. Guy noticed David Sr. "looking angry." Guy testified that David Sr. opened his door. Guy saw a silver gun in David Sr.'s hand. Guy testified that, at that moment, he thought he "was fixing to get shot, either shot or dead." Guy testified that, when David Sr. pulled the gun out and aimed, Guy put his head down and fired shots. Cole then sped away.

¶ 12 The jury was instructed that, to sustain the charge of attempted first degree murder, the State had to prove beyond a reasonable doubt that (1) Guy "performed an act which constituted a substantial step toward the killing of an individual," (2) Guy "did so with the intent to kill an individual," and (3) Guy "was not justified in using the force he used." The instruction was based on Illinois Pattern Jury Instructions, Criminal, No. 6.07X (4th ed. 2000), and Illinois Pattern Jury Instructions, Criminal, No. 24-25.06A (4th ed. 2000).

¶ 13 When the State proffered the attempted first degree murder instruction, defense counsel stated, "No objection." Over the State's objection, the jury was instructed on the lesser-included offense of aggravated battery with a firearm. The jury was instructed that it could find Guy not guilty of attempted first degree murder, guilty of attempted first degree murder, or guilty of aggravated battery with a firearm.

¶ 14 As to first degree murder, the jury was instructed that a "person commits the offense of first degree murder when he kills an individual without lawful justification if, in performing the acts which cause the death, he intends to kill or do great bodily harm to that individual; [or] he knows that such acts create a strong probability of death or great bodily harm to that individual." The jury was also instructed that a "mitigating factor exists so as to reduce the offense of first degree murder to the lesser offense of second degree murder if at the time of the killing the defendant believes that circumstances exist which would justify the deadly force he uses, but his belief that such circumstances exist is unreasonable."

¶ 15 The jury asked two questions during their deliberations. First, the jury asked: "Are there only two counts? Number one, murder of David Woods? Number two, attempt murder of Sheena Woods?" The circuit court responded that there were three counts: one count of attempted murder and two counts of murder that merged into one series of verdict forms. Second, the jury asked: "The attempted murder

- 4 -

charge means attempted on whom?" Over a defense objection, the circuit court responded: "The answer to your question is in the instructions."

¶ 16    The jury found Guy guilty of second degree murder and attempted first degree murder. The jury found that, at the time of killing David Sr., Guy believed that circumstances existed that would justify the deadly force he used, but his belief that such circumstances existed was unreasonable. The jury also found on the count of attempted first degree murder of Sheena that Guy acted with the intent to kill an individual and that he was not justified in using the force he used.

¶ 17    In posttrial motions, Guy argued that the verdicts for second degree murder and attempted first degree murder were legally inconsistent. Guy also argued that the elements instruction for the offense of attempted first degree murder failed to properly instruct the jury. The circuit court summarily denied the posttrial motions without commenting on the specific alleged errors. Guy was sentenced to two consecutive 30-year prison terms. Guy did not raise the inconsistent verdict issue or the improper instruction issue in his direct appeal or in his initial postconviction petition, which was dismissed at the first stage of proceedings.

¶ 18                    B. Instant Postconviction Proceedings

¶ 19    On February 20, 2020, Guy filed the successive postconviction petition at issue here. Guy claimed that the second degree murder and attempted first degree murder verdicts were inconsistent. The petition argued that, because the jury found that Guy did not have the specific intent to commit murder, he did not have the intent necessary to sustain his conviction for attempted first degree murder. Guy separately argued that the trial court made a "fatal error" in its response to two questions from the jury during deliberations. In a supplement to the petition, Guy argued that direct appeal counsel was ineffective for failing to challenge his attempted first degree murder conviction.

¶ 20    Attached to the petition were two letters from direct appeal counsel to Guy sent around the time of Guy's direct appeal. Counsel instructed Guy, citing *People v. Lopez*, 166 Ill. 2d 441 (1995), that "it was not possible to challenge [his] attempt first degree murder conviction in this appeal." After Guy was denied relief on direct appeal, counsel instructed Guy to focus his postconviction petition on "things that

are new and not really talked about in the current record." Counsel explained that Guy could raise "old issues" through claims of ineffective assistance of counsel but that, "having seen the issues that were and were not raised" in Guy's case, counsel suggested that Guy focus on new issues in his postconviction petition.

¶ 21 The circuit court, at the second stage of proceedings, dismissed Guy's successive petition as to all issues "with the exception of the jury issue dealing with the Attempt First Degree Murder Charge." After a third-stage hearing, where only documentary evidence was admitted, the circuit court granted Guy's petition in part, vacated the attempted first degree murder conviction, and set the matter for a new trial on the count of attempted first degree murder. The court stated:

"I can't sit here and in good conscience say that there was some question that was raised by the jury that calls into question in general the, for lack of a better term, the integrity of the conviction for attempt first degree murder. I think procedurally there were more than enough questions that were raised by the record, by the instructions to raise a concern that I have with the finding that the jury made."

¶ 22 Both parties appealed. Guy appealed from the second-stage dismissal of many of his claims. The State appealed from the circuit court's judgment vacating Guy's attempted first degree murder conviction.

¶ 23 C. The Appellate Court

¶ 24 The appellate court reversed Guy's attempted first degree murder conviction outright. 2023 IL App (3d) 210423, ¶ 85. Procedurally, the court determined that direct appeal counsel was ineffective for failing to raise either the inconsistent verdict issue or the instruction error issue. *Id.* ¶ 26. The court further determined that appointed postconviction counsel, who failed to file a certificate pursuant to Illinois Supreme Court Rule 651(c) (eff. Feb. 6, 2013), erred by not amending the postconviction petition to include the instruction error issue, which "went part and parcel with the inconsistent verdict issue." 2023 IL App (3d) 210423, ¶ 26.

¶ 25 On the merits, the court found that the jury was improperly instructed on attempted first degree murder. *Id.* ¶¶ 26, 59. The court held that "a defendant cannot

intend to commit the specific offense of first degree murder unless he intends to kill without lawful justification." *Id.* ¶ 59. Therefore, the jury was improperly instructed when the jury was only required to find that Guy acted with the "intent to kill." *Id.* ¶ 61.

¶ 26     The court then found that there was an inconsistency between the jury's finding that Guy believed in the need for self-defense and the jury's finding that was required to sustain an attempted first degree murder conviction: intent to kill without lawful justification. *Id.* ¶ 63. Finally, the court held that the appropriate remedy was an outright reversal because a jury could not "legally find a defendant to have intended to kill without lawful justification when he believed in the need for self-defense." *Id.* ¶ 84. Therefore, with the second degree murder conviction "locked in place," the ultimate issue of Guy's intent could not be relitigated. *Id.*

¶ 27     This court allowed the State's petition for leave to appeal pursuant to Illinois Supreme Court Rule 315(a) (eff. Oct. 1, 2021).

¶ 28                                    II. ANALYSIS

¶ 29     The substantive issue in this appeal is which intent must the State prove in an attempted first degree murder case: (1) intent to kill or (2) intent to kill without lawful justification. An answer to that question resolves two issues directly related to Guy's trial: whether the jury was properly instructed on the elements of attempted first degree murder and whether the jury's finding that Guy had the subjective belief in the need for self-defense necessitated an acquittal on the charge of attempted first degree murder. Answers to these two questions, in turn, establish that direct appeal counsel was ineffective for failing to raise these issues, either directly or through a claim of ineffective assistance of trial counsel. Because we allowed the State's petition for leave to appeal "on the important issue of the mental state requirement for attempt first degree murder," we address that question first before addressing several of the State's alternative arguments for reversal.

¶ 30                                  A. Standard of Review

¶ 31      The question presented requires us to interpret provisions of the Criminal Code
of 1961, now the Criminal Code of 2012 (Code) (720 ILCS 5/1-1 *et seq.* (West
2002)). "This court has frequently restated the basic principles of statutory
interpretation." *People v. Lane*, 2023 IL 128269, ¶ 11. "The most fundamental rule
in statutory construction is to give effect to the legislative intent." *Murray v.
Chicago Youth Center*, 224 Ill. 2d 213, 235 (2007). "The language of the statute is
the best indication of the legislature's intent." *Id.* "If the language of a statute is
clear, this court must give effect to its plain and ordinary meaning without resort to
other aids of statutory construction." *Id.* We review issues of statutory interpretation
*de novo*. *Doe v. Burke Wise Morrissey & Kaveny, LLC*, 2023 IL 129097, ¶ 20.


¶ 32                  B. Intent Requirement—Attempted First Degree Murder

¶ 33      Section 8-4(a) of the Code provides that "[a] person commits an attempt when,
with intent to commit a specific offense, he does any act which constitutes a
substantial step toward the commission of that offense." 720 ILCS 5/8-4(a) (West
2002). "[A]n attempt requires the specific intent to commit an offense." *People v.
Bryant*, 113 Ill. 2d 497, 506 (1986); *Addison v. People*, 193 Ill. 405, 409 (1901)
("There must be an attempt joined with that specific intent, and the intent is a
necessary ingredient of the crime."). "[S]pecific-intent crimes require the State to
prove that defendant subjectively desired the prohibited result." *People v. Grayer*,
2023 IL 128871, ¶ 23; Black's Law Dictionary 931 (10th ed. 2014) (defining
"specific intent" as the "intent to accomplish the precise criminal act that one is
later charged with").

¶ 34      The "specific offense" at issue in this case is first degree murder. Section 9-1
of the Code defines first degree murder as follows:

"A person who kills an individual without lawful justification commits first
degree murder if, in performing the acts which cause the death:

(1) he either intends to kill or do great bodily harm to that individual or
another, or knows that such acts will cause death to that individual or
another; or

(2) he knows that such acts create a strong probability of death or great bodily harm to that individual or another[.]" 720 ILCS 5/9-1(a)(1), (2) (West 2002).[3]

¶ 35　　In a line of cases, this court has analyzed what it means to have the "intent to commit a specific offense" when it comes to the offense of attempted first degree murder. In *People v. Trinkle*, 68 Ill. 2d 198, 202 (1977), this court held that a conviction for attempted first degree murder requires proof that the defendant acted with the "intent to kill." This court found error in a jury instruction that permitted a conviction for attempted first degree murder if the defendant shot a gun " 'knowing such act created a strong probability of death or great bodily harm.' " *Id.* at 201; see *People v. Harris*, 72 Ill. 2d 16, 27 (1978) ("An instruction must make it clear that to convict for attempted murder nothing less than a criminal intent to kill must be shown.").

¶ 36　　In *People v. Barker*, 83 Ill. 2d 319, 323 (1980), we dealt with the validity of indictments for attempted first degree murder that alleged that the defendant " 'knowingly with intent to commit the offense of murder, did acts which constitute a substantial step towards the commission of murder.' " The defendant pleaded guilty to the indictment but on appeal argued that the indictment was defective for failing to allege that the defendant acted with the "intent to kill." *Id.* at 324. This court first distinguished *Trinkle* and *Harris*, as those cases dealt with erroneous jury instructions, not indictments. *Id.* at 325 ("The guilt of the defendant in the case before us was not determined by a trier of fact but by pleas, so we do not have the possibility of a jury, because of an erroneous instruction relative to the requisite intent, convicting a defendant when he, in fact, did not have the intent to kill."). This court then explained that the "literal requirement" of the attempt statute was complied with where the defendant was "charged with the attempt to commit a specific offense (murder) and with doing acts which constituted a substantial step

---

[3]The third type of first degree murder, felony murder, was excluded from the reach of the attempt statute by this court in 1975. See *People v. Viser*, 62 Ill. 2d 568, 582 (1975) ("[T]he unique characteristic of felony murder is that it does not include an intent to kill, and it was error to instruct the jury that the defendants could be found guilty of attempted murder in the absence of such an intent.").

toward the commission of that offense (firing a sawed-off shotgun in the direction of a police officer)." *Id.* at 326.

¶ 37    This court went on to explain that the addition of the language "intent to kill" to the indictment would have been "redundant" because "a person cannot intend to commit murder without intending to kill." *Id.* This court continued that

> "[i]f the indictment had only charged the defendant with the intent to kill and did not include the allegation that the defendant acted with the intent to commit murder, it would have been defective under section 8-4(a) of the Criminal Code *** in that it would not have charged the defendant with an intent to commit a specific offense." *Id.* at 327.

This court concluded: "The act of killing, or even intending to kill, is not necessarily a criminal offense (self-defense, for example)." *Id.*

¶ 38    In *People v. Reagan*, 99 Ill. 2d 238, 239-40 (1983), this court held that there was not an offense of attempted voluntary manslaughter based on imperfect self-defense under Illinois law. At the time, a person committed voluntary manslaughter "who intentionally or knowingly kill[ed] an individual *** if at the time of the killing he believe[d] the circumstances to be such that, if they existed, would justify or exonerate the killing under the principles stated in Article 7 of this Code, but his belief [wa]s unreasonable." *Id.* (quoting Ill. Rev. Stat. 1979, ch. 38, ¶ 9-2(b)).[4] This court held that, to commit attempted voluntary manslaughter, a "defendant would have to specifically intend to kill with an unreasonable belief in the need to use deadly force in self-defense." *Id.* at 241. This court stated:

---

[4]The definition of voluntary manslaughter is nearly identical to the second degree murder statute, which provides:

> "A person commits the offense of second degree murder when he commits the offense of first degree murder as defined in paragraphs (1) or (2) of subsection (a) of Section 9-1 of this Code and ***
>
>      *** [a]t the time of the killing he believes the circumstances to be such that, if they existed, would justify or exonerate the killing under the principles stated in Article 7 of this Code, but his belief is unreasonable." 720 ILCS 5/9-2(a)(2) (West 2002).

"The requirement of the attempt statute is not that there be an intent to kill, but that there be an intent to kill without lawful justification. If, as suggested by the People, defendant at the time of the shooting believed the circumstances to be such that if they existed would justify the killing, then there was no intent to commit an offense." *Id.*

¶ 39    This court then agreed with the appellate court's holding that "the defendant intended to defend himself. Although his belief in the need to defend himself or in the need to use deadly force was unreasonable, his intent was not to commit a crime. His intent was to engage in self-defense, which is not a criminal offense." *Id.* at 240-41 (quoting *People v. Reagan*, 111 Ill. App. 3d 945, 951 (1982)).

¶ 40    In 1986, the General Assembly's amendments to the Code restructured Illinois law on homicides. See Pub. Act 84-1450 (eff. July 1, 1987). The offense of murder was renamed first degree murder. *People v. Jeffries*, 164 Ill. 2d 104, 111 (1995). The offense of voluntary manslaughter was abolished, and the offense of second degree murder was substituted in its place. *Id.*

¶ 41    Under the revised statute and continuing through the date of the offense here, the State bears "the burden to prove, beyond a reasonable doubt, the elements of first degree murder and, when appropriately raised, the absence of circumstances at the time of the killing that would justify or exonerate the murder." *Id.* at 114 (citing Ill. Rev. Stat. 1987, ch. 38, ¶ 9-2(c)).

¶ 42    Then, under the revised statute, the defendant "bears the burden to prove, by a preponderance of the evidence, one of the factors in mitigation which must be present to reduce an offense of first degree murder to second degree murder." *Id.* (citing Ill. Rev. Stat. 1987, ch. 38, ¶ 9-2). One factor in mitigation, imperfect self-defense, "occurs when there is sufficient evidence that the defendant believed he was acting in self-defense, but that belief is objectively unreasonable." *Id.* at 113.

¶ 43    In *Lopez*, this court considered a similar question to the one answered in *Reagan*, namely, whether the offense of attempted second degree murder existed under Illinois law. *Lopez*, 166 Ill. 2d at 442. This court explained that "the intent required for attempted second degree murder, if it existed, would be the intent to kill without lawful justification, plus the intent to have a mitigating circumstance present." *Id.* at 448. This court reiterated the rationale from *Reagan*:

"As noted in *Reagan*, the mental state required for attempted voluntary manslaughter, if such crime existed, would not simply have been the intent to kill, but the intent to kill without lawful justification. This is because the attempt statute requires the intent to commit a specific offense, and simply intending to kill is not an offense. For example, killing in self-defense is not a crime. This court further noted in *Reagan* that a defendant intending to defend himself, although unreasonably, would not have the intent to unlawfully kill. Such a defendant would have the intent to lawfully kill using self-defense. The two different intents, intent to kill unlawfully and intent to kill in self-defense, cannot coexist in the same crime." *Id.*

¶ 44     In a partial concurrence, partial dissent, Justice McMorrow disagreed with the majority's conclusion that the crime of attempted second degree murder did not exist under Illinois law. *Id.* at 451 (McMorrow, J., concurring in part and dissenting in part, joined by Bilandic, C.J.). Justice McMorrow noted the legislature's recent amendments, which created the crime of second degree murder. *Id.* at 455. Unlike the prior crime of voluntary manslaughter, the statutory mitigating factors were not elements of second degree murder. *Id.* Justice McMorrow would have held that, because the "crime of second degree murder is first degree murder plus mitigating circumstances," "the crime of *attempted second degree murder* is simply attempted first degree murder plus mitigating circumstances." (Emphasis in original.) *Id.*

¶ 45     Justice McMorrow also highlighted the "illogical and disparate" sentencing treatment of defendants under certain circumstances. *Id.* at 451-52. Justice McMorrow explained that, where one of the mitigating circumstances is present, a defendant who inflicts an injury would be better off if the victim died than if the victim lived. *Id.* at 452-53 (citing Timothy P. O'Neill, *"With Malice Toward None": A Solution to an Illinois Homicide Quandary*, 32 DePaul L. Rev. 107, 107-08 (1982)). If the victim died, the offense would be reduced to second degree murder, with a maximum 15-year sentence and the possibility of probation. *Id.* If the victim lived, then no mitigation is allowed, and the offense would be attempted first degree murder, a Class X felony with a maximum 30-year sentence and no possibility of probation. *Id.*

¶ 46     Based on *Reagan* and *Lopez*, the statutory requirement that a defendant have the "intent to commit a specific offense" means just that: the defendant must intend

to accomplish the prohibited result with the requisite mental state. See *Reagan*, 99 Ill. 2d at 241; *Lopez*, 166 Ill. 2d at 448 (majority opinion). First degree murder only occurs when a person "kills an individual without lawful justification." 720 ILCS 5/9-1(a) (West 2002). Therefore, the intent required for attempted first degree murder is the intent to kill without lawful justification. This intent is judged from a subjective standpoint, *i.e.*, from the personal perspective of the defendant. See *Grayer*, 2023 IL 128871, ¶ 23 ("specific-intent crimes require the State to prove that defendant subjectively desired the prohibited result").

¶ 47 A defendant who subjectively believes in the need for self-defense cannot be convicted of attempted first degree murder because the defendant would not have the specific intent to commit first degree murder. *Contra People v. Jones*, 2024 IL App (1st) 221555, ¶ 37 (holding that because "lawful justification is not part of the mental state" for first degree murder; " 'intent to kill' is all that the State must prove in order to convict a defendant of attempted first degree murder"). To be sure, included in the first degree murder statute is the phrase "without lawful justification," which is descriptive of the killing and not the mental state. Nonetheless, if the trier of fact fails to find that the killing was without lawful justification, a person cannot be convicted of the completed offense of first degree murder. See *Lopez*, 166 Ill. 2d at 449 ("These arguments fail to consider the specific language of Illinois' attempt statute, which plainly requires the intent to commit a specific offense, not simply the intent required to commit the predicate offense."). In sum, a defendant who believes he is acting in self-defense intends to kill with lawful justification and, therefore, does not have the intent to commit the offense of first degree murder.

¶ 48 We find further support for our holding from subsequent legislative action. In 2004, the Criminal Law Edit, Alignment, and Reform Initiative (CLEAR) Commission (CLEAR Commission) "began a multiyear undertaking to reform the Illinois Criminal Code." *People v. Haynes*, 2024 IL 129795, ¶ 30 (citing John Decker, *The Mission of the Criminal Law, Edit, Alignment, and Reform Commission (CLEAR): An Introductory Commentary*, 41 J. Marshall L. Rev. 611, 618 (2008)). As part of the undertaking, the CLEAR Commission considered the issue raised in *Lopez*. See Michael P. Toomin, *Second Degree Murder and Attempted Murder: CLEAR's Efforts to Maneuver the Slippery Slope*, 41 John

- 13 -

Marshall L. Rev. 659, 659 (2008). Judge Toomin, a member of the CLEAR Commission, stated:

"The Commission also focused upon the perceived legal oddity in the penalty provided for the substantive offense of second degree murder and the inchoate crime of attempt murder currently on the books. Consideration was given to the anomaly that allows a defendant who succeeds in intentionally killing his victim to be found guilty of second degree murder, with a penalty of four to twenty years or probation, whereas the offender whose efforts do not bear fruition may be found guilty of attempt first degree murder, a non-probationable offense with a penalty of six to thirty years." *Id.*

¶ 49 The CLEAR Commission's solution was to amend section 8-4 of the Code to allow a defendant convicted of attempted first degree murder to prove, at sentencing, that " 'he or she was acting under a sudden and intense passion resulting from serious provocation by the individual whom the defendant endeavored to kill, or another, and, had the individual the defendant endeavored to kill died, the defendant would have negligently or accidentally caused that death.' " *Haynes*, 2024 IL 129795, ¶ 24 (quoting 720 ILCS 5/8-4(c)(1)(E) (West 2016)); see *id.* ¶ 31; Toomin, *supra*, at 699-700. If proven, the sentence for the attempted first degree murder conviction would be that of a Class 1 felony. See 720 ILCS 5/8-4(c)(1)(E) (West 2010). The General Assembly cited the CLEAR Commission when passing the legislation that created section 8-4(c)(1)(E). *Haynes*, 2024 IL 129795, ¶ 31 (citing 96th Ill. Gen. Assem., Senate Proceedings, May 27, 2009, at 140, and 96th Ill. Gen. Assem., House Proceedings, May 29, 2009, at 37-48).

¶ 50 Judge Toomin explained why the CLEAR Commission's recommendation did not provide for a mitigated sentence when a jury finds that a defendant charged with attempted first degree murder acted with an unreasonable belief in the need for self-defense. See Toomin, *supra*, at 700 ("Commentators and practitioner alike may question why CLEAR's proposal did not also encompass imperfect self defense."). Judge Toomin wrote that, "in rejecting suggestions to include imperfect self defense, CLEAR relied upon the teaching of *Lopez*, a defendant who actually believed that he was acting in self defense should be acquitted of attempt first degree murder as he did not intend to kill without lawful justification." *Id.* at 700 (citing *Lopez*, 166 Ill. 2d at 449).

¶ 51    Judge Toomin's explanation of the CLEAR Commission's proposal, which was enacted by the legislature, comports with our precedent. In three of our cases leading up to the CLEAR Commission's work, we expressly stated that an individual who intends to kill with lawful justification, albeit unreasonably, is not guilty of attempted first degree murder. See *Barker*, 83 Ill. 2d at 327 ("The act of killing, or even intending to kill, is not necessarily a criminal offense (self-defense, for example)."); *Reagan*, 99 Ill. 2d at 240 ("If, as suggested by the People, defendant at the time of the shooting believed the circumstances to be such that if they existed would justify the killing, then there was no intent to commit an offense."); *Lopez*, 166 Ill. 2d at 448 ("[T]he attempt statute requires the intent to commit a specific offense, and simply intending to kill is not an offense. For example, killing in self-defense is not a crime.").

¶ 52    Judge Toomin's explanation serves as persuasive authority on why the legislature provided the opportunity for mitigation as to serious provocation and not as to imperfect self-defense. *Contra People v. Guyton*, 2014 IL App (1st) 110450, ¶ 45 (explaining that the legislature's decision to amend section 8-4 of the Code "suggests a decision not to provide a mitigating factor of imperfect self-defense to attempted second degree murder"). Chairs of the CLEAR Commission, former Governor James Thompson and former Illinois Appellate Court Justice Gino DiVito, wrote in an article that the amendment to section 8-4 was "designed to cure the problems that have been identified by Illinois courts and legal commentators for the past twenty years regarding the interplay between the attempt statute and the crime of second-degree murder." James R. Thompson *et al.*, *The Illinois Criminal Code of 2009: Providing Clarity in the Law*, 41 J. Marshall L. Rev. 815, 826 (2008). The article continued that the amendment reconciled the "sentencing anomaly" resulting from this court's decisions in *Reagan* and *Lopez*. *Id.* Unless Judge Toomin's explanation is correct, the CLEAR Commission's proposal, and the subsequent legislative acceptance of that proposal, cured only half of the sentencing anomaly raised in *Reagan* and *Lopez*.

¶ 53    In sum, to prove a defendant's guilt of attempt, the State must prove beyond a reasonable doubt that the defendant acted "with intent to commit a specific offense." 720 ILCS 5/8-4(a) (West 2002). Consistent with this statutory requirement, our precedent on attempted offenses makes clear that a defendant must specifically intend to commit the underlying offense and not merely intend the

- 15 -

result of the underlying offense. First degree murder can only be committed if the killing is done "without lawful justification." *Id.* § 9-1(a) ("[a] person who kills an individual without lawful justification commits first degree murder"). Therefore, we hold that, to commit attempted first degree murder, the defendant must have the intent to kill without lawful justification.[5]

¶ 54                    C. Alternative Arguments That Were Not Preserved

¶ 55        Aside from the substantive issue, the State raises a number of alternative arguments for reversal of the appellate court's judgment: (1) whether Guy established cause to file a successive postconviction petition, (2) whether Guy established an ineffective assistance of counsel claim where appellate counsel would have been barred by the invited error doctrine from raising the instruction and inconsistent verdict issues on direct appeal, (3) whether, even if the attempted first degree murder instruction misstated the law, the verdicts were legally consistent because they were based on separate acts, and (4) whether, even if the appellate court was substantively correct, the appropriate remedy is a retrial or the entry of a conviction of aggravated battery with a firearm.

¶ 56        In the State's petition for leave to appeal, the State argued exclusively that this court should allow the petition on the substantive issue resolved above. The State argued:

> "This Court should grant leave to appeal to resolve the conflict in the appellate districts on the important issue of whether the existence of a mitigating factor negates the intent required to commit attempt first degree murder and correct the appellate court's erroneous reversal of defendant's attempt first degree murder conviction.
>
> * * *
>
> The appellate court created a conflict in the appellate districts when it erroneously held that a jury's conviction of a defendant of second degree

---

[5]We overrule the decisions in *Guyton*, 2014 IL App (1st) 110450, and *Jones*, 2024 IL App (1st) 221555, to the extent they are inconsistent with this holding.

murder based on the mitigating factor that the defendant unreasonably believed there was a need for self-defense is fatally inconsistent with the defendant's conviction for attempt first degree murder.

\* \* \*

This Court should resolve the conflict between the Third District, on the one hand, and the First and Second Districts, on the other, as to whether the existence of an unreasonable belief in the need for self-defense negates the intent required to commit attempt first degree murder, rendering a jury's verdicts convicting the defendant of attempt first degree murder and second degree murder fatally inconsistent.

\* \* \*

This Court should grant review to resolve the conflict regarding whether the mitigating factor of an unreasonable belief in the need for self-defense negates the intent requirement for attempt first degree murder."

¶ 57     Rule 315, which governs petitions for leave to appeal from the appellate court to this court, provides that a petition shall include, *inter alia*, "a statement of the points relied upon in asking the Supreme Court to review the judgment of the Appellate Court" and "a short argument (including appropriate authorities) stating why review by the Supreme Court is warranted and why the decision of the Appellate Court should be reversed or modified." Ill. S. Ct. R. 315(c)(3), (5) (eff. Oct. 1, 2021). The State's petition meets neither of these requirements as to any of its alternative arguments for reversal of the appellate court's judgment.

¶ 58     This court has at times strictly enforced Rule 315(c)'s requirements when deciding which issues to address. See *People v. Whitfield*, 228 Ill. 2d 502, 509 (2007) ("The State's petition for leave to appeal does not meet either of these requirements with respect to the issue of forfeiture. Accordingly, we decline to consider the State's forfeiture argument, as it was not properly preserved for our review."); see also *1350 Lake Shore Associates v. Healey*, 223 Ill. 2d 607, 629 (2006) ("Failure to include an issue in a petition for leave to appeal results in forfeiture of that issue for review. [Citation.] Accordingly, we decline to consider this argument.").

¶ 59        However, this court has considered issues not raised in a petition for leave to appeal under certain circumstances. For example, we have explained that "review of an issue not specifically mentioned in a petition for leave to appeal will be appropriate when that issue is 'inextricably intertwined' with other matters properly before the court." *In re Rolandis G.*, 232 Ill. 2d 13, 37 (2008) (quoting *Hansen v. Baxter Healthcare Corp.*, 198 Ill. 2d 420, 430 (2002)). Additionally, the State relies extensively on the principle that

> "where the appellate court reverses the judgment of the trial court, and the appellee in that court brings the case to this court as appellant, that party may raise any issues properly presented by the record to sustain the judgment of the trial court, even if the issues were not raised before the appellate court." *People v. Artis*, 232 Ill. 2d 156, 164 (2009).

¶ 60        This latter principle does not apply to provide an avenue to review the State's alternative arguments. First, the principle does not serve to negate a party's obligations under Rule 315. See *People v. Urzua*, 2023 IL 127789, ¶ 67 (declining to excuse forfeiture where the State did not include an issue in its petition for leave to appeal even though the State was the appellee in appellate court). Second, while the principle seems to be of unlimited breadth, it has in practice been applied in a narrower manner. In *Artis*, for example, this court cited the principle in declining to find that the State forfeited the issue of whether a doctrine established in one of this court's prior decisions should be abandoned. *Artis*, 232 Ill. 2d at 164. This court explained that, because the "appellate court lacks authority to overrule decisions of this court," "presentation of an argument by the State in the appellate court urging the abandonment of the one-act, one-crime doctrine would have been futile." *Id.* Later in the decision, noting "that the rules of forfeiture in criminal proceedings are applicable to the State as well as to the defendant," we declined to consider an argument made by the State because the State had conceded the issue in the appellate court and failed to include the issue in its petition for leave to appeal. *Id.* at 177-78. Therefore, this court, in determining which issues to consider, has distinguished between issues not raised in the appellate court and issues not raised in a petition for leave to appeal.

¶ 61        Under the facts of this case, we decline to consider two of the State's four alternative arguments for reversal. The invited-error argument is inextricably

intertwined with the ineffective assistance of counsel claim properly before this court. See *In re Rolandis G.*, 232 Ill. 2d at 37. We will reach the remedy issue, despite the State's forfeiture, in the interests of justice.

¶ 62    The State's cause argument is completely unrelated to the substantive question we allowed the petition for leave to appeal on. Whether a petitioner has established cause to file a successive postconviction petition asks in essence whether the claim should have been raised in an initial postconviction petition. See 725 ILCS 5/122-1(f) (West 2018) ("a prisoner shows cause by identifying an objective factor that impeded his or her ability to raise a specific claim during his or her initial post-conviction proceedings"). Whether Guy established cause to file his successive postconviction petition is an issue tied to the specific procedural facts of this case. In short, the cause argument is not "inextricably intertwined" with the substantive issue the State presented in its petition for leave to appeal.

¶ 63    Following *Artis*, we decline to consider the State's argument that the attempted first degree murder conviction may be upheld because the two convictions were based on separate acts. In the appellate court, the State conceded that Guy's intent did not change when he fired the multiple shots that supported the second degree murder conviction and the attempted first degree murder conviction. 2023 IL App (3d) 210423, ¶ 64 ("In this case, the State concedes that defendant's mental state and intent did not differ when firing the shot that killed David, resulting in the second degree murder conviction, and when firing the shot that injured Sheena, resulting in the attempted first degree murder conviction."). As the appellate court found, "the State never tried to distinguish defendant's mental state and intent *vis-à-vis* each specific shot." *Id.* The State also did not raise this issue in its petition for leave to appeal.

¶ 64    In sum, the State has forfeited the two arguments not properly preserved for our review. See *Crossroads Ford Truck Sales, Inc. v. Sterling Truck Corp.*, 2011 IL 111611, ¶ 63 ("While this court does not require a fully developed argument in a petition for leave to appeal, a party must raise an argument with sufficient grounds to show there is an issue."). Therefore, we decline to consider those issues.

¶ 65                     D. Guy's Attorneys' Nonfeasance Made Their
                         Representation Ineffective and Unreasonable

¶ 66        With the substantive question we allowed the petition for leave to appeal on
answered, the remaining issues are relatively straightforward. The jury here was
improperly instructed on the elements of attempted first degree murder. The jury
was instructed that Guy could be found guilty of attempted first degree murder if
he had the intent to kill, which allowed for a conviction despite the jury's finding
that Guy acted with the subjective intent to kill with lawful justification. The jury's
finding that Guy acted with the subjective intent to kill with lawful justification is
incompatible with a finding that Guy had the intent to kill without lawful
justification. If, as the jury found here, Guy acted with the subjective intent to kill
with lawful justification, he could not have been convicted of the offense of
attempted first degree murder.

¶ 67        Because this is a successive postconviction petition, the instruction error and
inconsistent verdict issue were necessarily not adequately raised in a timely fashion.
Three attorneys share in the fault for failing to adequately raise these issues: trial
counsel, direct appeal counsel, and appointed postconviction counsel. Trial counsel
should have objected to the instruction and offered an alternative instruction
consistent with *Reagan* and *Lopez*. See *People v. Bush*, 2023 IL 128747, ¶ 79
(explaining that a defendant receives ineffective assistance of counsel where
"counsel's performance fell below an objective standard of reasonableness" and "a
reasonable probability exists that, but for counsel's unprofessional errors, the result
of the proceeding would have been different" (quoting *People v. Gayden*, 2020 IL
123505, ¶ 27)); see also *People v. Mister*, 2016 IL App (4th) 130180-B, ¶ 97
("counsel's decision as to which jury instruction to tender can support a claim of
ineffective assistance of counsel only if that choice is objectively unreasonable").
Because trial counsel did not contemporaneously challenge the instruction error,
direct appeal counsel should have raised trial counsel's ineffectiveness on direct
appeal. *People v. Simms*, 192 Ill. 2d 348, 362 (2000) ("A defendant who contends
that appellate counsel rendered ineffective assistance, *e.g.*, by failing to argue a
particular issue, must show that appellate counsel's failure to raise the issue was
objectively unreasonable and prejudiced the defendant."). As discussed above, both
*Reagan* and *Lopez* made clear that an attempted first degree murder conviction
required a finding that the defendant acted with the intent to kill without lawful

justification. Direct appeal counsel's appraisal of *Lopez*, and the advice to Guy not to challenge his attempted first degree murder conviction, was unreasonable. See *id.* (explaining that, while appellate counsel is "not obligated to brief every conceivable issue on appeal," counsel is incompetent where his or her appraisal of the merits is "patently wrong").

¶ 68     The State argues at this point that appellate counsel was not ineffective because appellate counsel was barred by the invited error doctrine from challenging the propriety of the attempted first degree murder instruction where trial counsel agreed to the instruction. "Under the doctrine of invited error, an accused may not request to proceed in one manner and then later contend on appeal that the course of action was in error." *People v. Carter*, 208 Ill. 2d 309, 319 (2003). Based on our precedent, direct appeal counsel was precluded from claiming error in the attempted first degree murder instruction where, when it was offered, trial counsel stated, "No objection." See *People v. Parker*, 223 Ill. 2d 494, 508 (2006) (holding that the defendant waived any claim of error in a verdict form where trial counsel responded " 'No objection' " when the State tendered the verdict form). But that hurdle could have been overcome if direct appeal counsel framed the issue in the proper form: trial counsel was ineffective in agreeing to the instruction.

¶ 69     Appointed successive postconviction counsel also did not raise the instruction error by failing to present the issue in the proper legal form: that direct appeal counsel was ineffective for failing to argue trial counsel's ineffectiveness where trial counsel neither objected to the erroneous instruction nor offered an alternative instruction. Appointed counsel did not file a certificate under Rule 651(c). Illinois Supreme Court Rule 651(c) (eff. Feb. 6, 2013) provides: "The record *** shall contain a showing, which may be made by the certificate of petitioner's attorney, that the attorney *** has made any amendments to the petitions filed *pro se* that are necessary for an adequate presentation of petitioner's contentions." See *People v. Perkins*, 229 Ill. 2d 34, 43-44 (2007) (explaining that "the purpose of Rule 651(c) is to ensure that counsel shapes the petitioner's claims into proper legal form and presents those claims to the court"). Framing the issues in the proper legal form would have thwarted the State's argument that trial counsel invited the instruction error. See *People v. Villareal*, 198 Ill. 2d 209, 227-28 (2001) (analyzing an ineffective assistance of trial counsel claim where trial counsel invited the error by submitting the verdict forms at issue). In other words, had appointed postconviction

counsel alleged that direct appeal counsel was ineffective for failing to allege trial counsel's ineffectiveness in regard to the attempted first degree murder instruction, the petition would have overcome the procedural bar alleged by the State. See *People v. Addison*, 2023 IL 127119, ¶ 21 (explaining that Rule 651(c) requires appointed counsel to make "amendments that are necessary to overcome procedural bars").

¶ 70 None of Guy's three attorneys—trial counsel, direct appeal counsel, or successive postconviction counsel—adequately argued that the attempted first degree murder instruction was incorrect and that the jury's finding that Guy subjectively believed that he was justified in the shooting was inconsistent with the statutory intent necessary to sustain an attempted first degree murder conviction— intent to kill without lawful justification. Further, the attorneys should have argued that the jury's finding necessitated an acquittal on the charge of attempted first degree murder. Had the attorneys presented the issues adequately, there is a strong probability that Guy would have had his attempted first degree murder conviction reversed. See *Bush*, 2023 IL 128747, ¶ 79. Therefore, we agree with the appellate court that Guy has cleared the procedural bars necessary for relief in this case. See 2023 IL App (3d) 210423, ¶ 26.

¶ 71 E. Remedy

¶ 72 In the interests of justice, we enter a conviction for the lesser-included offense of aggravated battery with a firearm. See *People v. Figueroa*, 2020 IL App (2d) 160650, ¶ 81 (entering a conviction on a lesser-included offense in the interests of justice). Illinois Supreme Court Rule 615(b)(3) (eff. Jan. 1, 1967) provides: "On appeal the reviewing court may *** reduce the degree of the offense of which the appellant was convicted." We have often stated the general proposition that, while the State "has no legitimate interest in obtaining a conviction for a crime greater than that warranted by the evidence, *** neither does the defendant have a right to an acquittal when the evidence, although not sufficient to establish the greater crime, is sufficient to establish a lesser included offense." (Emphasis and internal quotation marks omitted.) *People v. Knaff*, 196 Ill. 2d 460, 473 (2001).

¶ 73 In the instant case, the evidence was insufficient, based on the jury's finding that Guy intended to act with lawful justification, to sustain a conviction for

attempted first degree murder. However, the evidence was sufficient to prove the offense of aggravated battery with a firearm, a lesser-included offense the jury was instructed on at Guy's request.

¶ 74    In finding Guy guilty of attempted first degree murder, the jury found that Guy fired the shots "with the intent to kill" and that Guy was "not justified in using the force he used." The aggravated battery of a firearm instruction required the jury to find that Guy (1) "knowingly caused injury to another person," (2) "did so by discharging a firearm," and (3) "was not justified in using the force which he used." See 720 ILCS 5/12-4.2(a) (West 2002) ("A person commits aggravated battery with a firearm when he, in committing a battery, knowingly or intentionally by means of the discharging of a firearm (1) causes any injury to another person[.]").

¶ 75    The evidence and the jury's findings indisputably established the elements of aggravated battery with a firearm. Guy knowingly caused injury to Sheena, he did so by discharging a firearm, and he was not justified in firing the shots. Therefore, we enter a conviction on the lesser-included offense of aggravated battery with a firearm. We remand to the circuit court for sentencing.

¶ 76                                III. CONCLUSION

¶ 77    In sum, we hold that a conviction for attempted first degree murder requires a finding that the defendant had the intent to kill without lawful justification. Guy's jury was erroneously instructed because it was only required to find that he had the intent to kill. The jury's verdict of second degree murder, which required that the jury find that Guy subjectively believed in the need for self-defense, is incompatible with a finding that Guy had the intent to kill without lawful justification. Procedurally, direct appeal counsel should have raised trial counsel's ineffectiveness in failing to object to the attempted first degree murder instruction. Appointed postconviction counsel then needed to place Guy's claims in the proper legal form to avert any procedural obstacles to the review of Guy's claims. Had Guy's attorneys acted effectively, Guy would have received the relief he finally received in the judgment below: the reversal of his attempted first degree murder conviction. Instead of an outright reversal, we enter a conviction on the lesser-included offense of aggravated battery with a firearm. Accordingly, we affirm the appellate court's judgment in part, reverse in part, and remand to the circuit court

- 23 -

for sentencing on the offense of aggravated battery with a firearm.

¶ 78        Appellate court judgment affirmed in part and reversed in part.

¶ 79        Cause remanded with directions.

¶ 80        CHIEF JUSTICE THEIS, dissenting:

¶ 81        According to the majority, "[t]he substantive issue in this appeal is which intent must the State prove in an attempted first degree murder case: (1) intent to kill or (2) intent to kill without lawful justification." (*supra* ¶ 29). That initial misapprehension dooms the analysis. Correctly framed, the issue in this appeal is whether the trial court erred in dismissing petitioner's successive postconviction petition. Therefore, I respectfully dissent. Under the proper framework, I would hold that the trial court did not err in dismissing the successive petition at the second stage of proceedings.

¶ 82        The Post-Conviction Hearing Act (Act) provides the procedural mechanism under which a petitioner can assert that "in the proceedings which resulted in his or her conviction there was a substantial denial of his or her rights under the Constitution of the United States or of the State of Illinois or both." 725 ILCS 5/122-1(a) (West 2022). A petition for postconviction relief is not an appeal of the underlying judgment but instead a collateral proceeding to address constitutional issues that were not, and could not have been, adjudicated on direct appeal. *People v. Clark*, 2023 IL 127273, ¶ 38. Any issues in a postconviction petition that were decided on direct appeal are barred by *res judicata*, and any issues that could have been raised on direct appeal are procedurally defaulted. *People v. Ligon*, 239 Ill. 2d 94, 103 (2010). Further, "[a]ny claim of substantial denial of constitutional rights not raised in the original or an amended petition is waived." 725 ILCS 5/122-3 (West 2022).

¶ 83        The Act contemplates the filing of only one petition. *Id.* § 122-1(f). Section 122-1(f) provides that a petitioner may obtain leave to file a successive petition only after demonstrating cause for the failure to raise the new constitutional claim in the initial petition and prejudice from that failure. *Id.* "Cause" refers to an

*objective factor external to the defense* that impeded petitioner's ability to raise the claim in an earlier proceeding; "prejudice" refers to a claimed constitutional error that so infected the entire trial resulting in a conviction or sentence that violates due process. *People v. Davis*, 2014 IL 115595, ¶ 14. We have characterized the cause-and-prejudice test as an "immense" procedural default hurdle. *Id.*

¶ 84    In seeking leave to file his successive petition, petitioner argued that he was impeded from raising his claims in his first petition because his former direct appeal counsel had advised him that his inconsistent verdict claim was not tenable. Direct appeal counsel relied on this court's holding in *People v. Lopez*, 166 Ill. 2d 441, 448 (1995) (holding that Illinois does not recognize the crime of attempted second degree murder), and the appellate court's decision in *People v. Hill*, 276 Ill. App. 3d 683 (1995) (holding that the transferred intent doctrine applies to attempted murder).

¶ 85    Notably, here, the appellate court remanded petitioner's direct appeal for a *Krankel* hearing (see *People v. Krankel*, 102 Ill. 2d 181 (1984)) on his ineffective assistance of counsel claims. On remand, petitioner filed an amended motion for a new trial, which spanned more than 100 pages and contained more than 75 different arguments with subparts. Among his arguments, he indeed asserted that the verdicts were inconsistent because, in finding petitioner guilty of second degree murder, the jury necessarily determined that petitioner believed he was acting in self-defense, and that counsel was ineffective for failing to ensure that the jury was properly instructed. The trial court held a two-day hearing to address all of petitioner's claims. At the hearing, petitioner argued that the jury "came back with inconsistent verdict[s]" and "they believed that I acted in self-defense *** and they seen it was unreasonable how I went about it so it's impossible for me to have intent to kill the person." After considering all of petitioner's claims, the trial court denied the motion, concluding that he did not receive ineffective assistance of counsel. Petitioner could have raised the ineffective assistance issue again on direct appeal from the trial court's decision, but he did not.

¶ 86    Additionally, petitioner relied on a subsequent letter from his former direct appeal counsel, written after the appellate court had affirmed his case on direct appeal but before he filed his initial postconviction petition. His former direct appeal counsel advised:

"My general suggestion is to focus on things that are new and not really talked about in the current record. *However, if you want to raise an issue that could have been raised during trial or the appeal, you can do so by arguing that all of your previous lawyers, including me, were ineffective for missing the issue. That allegation at least makes it possible to argue old issues in a post-conviction petition*, though, having seen the issues that were and were not raised so far in your case, I suggest you focus on new issues." (Emphasis added.)

There is nothing in these letters that *objectively* prevented petitioner from raising the ineffective assistance claims now presented in the successive petition earlier—that is, in his initial postconviction petition. Indeed, his former counsel instructed him exactly how to raise the issue. Petitioner chose not to do so. It defies credulity to suggest that some *external* cause prevented petitioner from asserting his claims in his original postconviction petition. See *People v. Jones*, 2013 IL App (1st) 113263, ¶ 24.

¶ 87        Further, in *People v. Guerrero*, 2012 IL 112020, ¶ 20, we held that "a defendant must raise the issue, even when the law is against him, in order to preserve it for review." The mere possibility that petitioner's claims would have been unsuccessful is simply not an objective factor external to the defense that precluded him from raising the claims in his initial postconviction petition. *Id.* Here, the correct conclusion is glaringly apparent: petitioner did not establish cause for failing to raise the claims in his initial petition. Accordingly, there is no need to consider the prejudice prong of the cause-and-prejudice test. *People v. Montanez*, 2023 IL 128740, ¶ 120.

¶ 88        The majority declines to honor the statutory waiver because it finds that the State forfeited this argument by failing to raise it in its petition for leave to appeal (*supra* ¶¶ 60-61). The majority inexplicably ignores the well-established principle in our caselaw that, when

" 'the trial court is reversed by the Appellate Court and the appellee in that court brings the case here for further review, he may raise any question properly presented by the record to sustain the judgment of the trial court, even though those questions were not raised or argued in the Appellate Court.' " *People v. Schott*, 145 Ill. 2d 188, 201 (1991) (quoting *Mueller v. Elm Park Hotel Co.*, 391 Ill. 391, 399 (1945)).

Our review of a second stage dismissal is *de novo*, and we can affirm the circuit court's dismissal of the petition on any ground substantiated by the record. Further, this court has held that it will reach an issue not raised in a petition for leave to appeal when that issue is not new to the case and is "discernible from an examination of the proceedings in the courts below." *Dineen v. City of Chicago*, 125 Ill. 2d 248, 266 (1988).

¶ 89    The cause and prejudice argument is not a new argument and was clearly discernible from an examination of the trial court proceedings. Additionally, the State raised the issue at length in its appellate brief in the appeal it filed from the circuit court's order granting petitioner third stage relief, which was consolidated with this appeal in the appellate court. See 2023 IL App (3d) 210423, ¶ 1. Applying these principles here, the State's cause and prejudice argument should have been considered by the majority as a matter of statutory waiver. When properly considered, the undeniable conclusion is that petitioner failed to establish cause for failing to raise his claim in his initial postconviction petition.

¶ 90    Alternatively, even if the court could excuse petitioner's statutory waiver, our review would be confined to the merits of petitioner's claim. The only cognizable constitutional claim undergirding petitioner's arguments for postconviction relief is that he was denied the effective assistance of counsel. The majority strays from that mooring and instead frames the case as one of statutory interpretation as if on direct appeal instead of applying the proper overarching constitutional analysis.

¶ 91    To prevail on a claim of ineffective assistance of counsel, petitioner must show that counsel's performance fell below an objective standard of reasonableness and the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The failure to satisfy either the deficiency prong or the prejudice prong precludes a finding of ineffective assistance of counsel. *People v. Enis*, 194 Ill. 2d 361, 377 (2000).

¶ 92    To satisfy the deficient performance prong of *Strickland*, a petitioner must show that his "counsel's performance was objectively unreasonable under prevailing professional norms." *People v. Domagala*, 2013 IL 113688, ¶ 36. To satisfy the prejudice prong petitioner must establish that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* (quoting *Strickland*, 466 U.S. at 694).

¶ 93    Here, petitioner made two essential claims: (1) ineffective assistance of appellate counsel for failing to raise the claim that the jury's guilty verdict on the second degree murder of David Woods was inconsistent with its guilty verdict for the attempted first degree murder of Sheena Woods and (2) unreasonable assistance of postconviction counsel for failing to raise the ineffectiveness of appellate counsel for failing to challenge the trial court's jury instruction on attempted first degree murder.

¶ 94    Regarding the first allegation, " '[l]egally inconsistent verdicts occur when an essential element of each crime must, by the very nature of the verdicts, have been found to exist and to not exist even though the offenses arise out of the same set of facts.' " *People v. Price*, 221 Ill. 2d 182, 188 (2006) (quoting *People v. Frieberg*, 147 Ill. 2d 326, 343 (1992)).

¶ 95    As explained in *People v. Jeffries*, 164 Ill. 2d 104, 114 (1995), the mitigation provided under section 9-2(c) of the Criminal Code of 1961 (Ill. Rev. Stat. 1987, ch. 38, ¶ 9-2(c)), commonly referred to as imperfect self-defense, is not an element of a charged offense. See *Jeffries*, 164 Ill. 2d at 121-22 (stating that second degree murder is "a *lesser mitigated offense* of first degree murder" (emphasis in original)). Here, the jury evaluated the evidence and concluded that the State had proved that petitioner committed the first degree murder of David Woods without lawful justification. The jury then reevaluated the evidence and concluded that, although legally unjustified, petitioner had established by a preponderance of the evidence the mitigating factor of imperfect self-defense—*i.e.*, he unreasonably believed in the need for self-defense against David. Thus, where the jury's finding on imperfect self-defense was not an element of the State's case, it could not be said that an essential element of each crime existed and did not exist.

¶ 96    Additionally, the jury's mitigation finding, based on a preponderance of the evidence, was not based on the same burden of proof required for the separate offense of attempted first degree murder. See *id.* at 124 (under the statutory scheme for second degree murder, "the defendant prove[s], by a preponderance of the evidence, the mitigation necessary to reduce the severity of a homicide charge *after* the State has proven each element of the charged offense" (emphasis in original)). Thus, because the alleged inconsistencies were founded on different burdens of proof, the jury's finding with respect to second degree murder cannot be legally

incongruous to its finding as to attempted first degree murder. Accordingly, where the verdicts were not legally inconsistent, there can be no finding of deficient performance or prejudice by appellate counsel for failing to raise this issue.

¶ 97    Regarding petitioner's second allegation and overlooking successive postconviction counsel's failure to frame the allegation in a coherent form, the question is whether the outcome of the jury instruction conference would have been different had counsel challenged the jury instruction. The answer to that question is a resounding "no," when properly and objectively evaluated at the time.

¶ 98    Counsel cannot be deemed ineffective for failing to make a futile motion to challenge a well-settled jury instruction. At the time of trial, the trial court gave Illinois Pattern Jury Instruction, Criminal, No. 6.05X (4th ed. 2000) (hereinafter IPI Criminal 4th) for attempted first degree murder. That instruction was the same instruction given in the same form for every attempted murder case since the committee note addressing the 1978 case of *People v. Harris*, 72 Ill. 2d 16 (1978), and the 1989 case of *People v. Velasco*, 184 Ill. App. 3d 618 (1989). See IPI Criminal 4th, No. 6.05X, Committee Note. The jury instruction given at petitioner's trial continued to be the instruction well after *Lopez* articulated in 1995 that there was no offense of attempted second degree murder. Indeed, until today, no court has ever stated that, to prove attempted first degree murder, the State has the burden to prove the absence of imperfect self-defense as an element of the offense. The mental state of intent to kill without lawful justification (imperfect self-defense) has never been expressed as a mental state in Illinois before today.

¶ 99    "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. Thus, the petitioner must establish that no competent counsel would have taken the position that his counsel did take. *Id.*

¶ 100    Neither trial nor appellate counsel could be objectively deficient for failing to predict that, today, a majority of this court would adopt a new interpretation of *Lopez* that the appellate court in this case only "implicitly" discovered for the first time in 2023. See 2023 IL App (3d) 210423, ¶ 37. Even during the pendency of postconviction proceedings, the only case interpreting the mental state for

attempted first degree murder had rejected this new interpretation. See *People v. Guyton*, 2014 IL App (1st) 110450.

¶ 101   In sum, when viewed in the proper framework of a successive postconviction petition, petitioner failed to establish cause for failing to raise the ineffective assistance issues in his initial postconviction petition. Additionally, even if leave was properly granted to file the successive petition, petitioner failed to establish his ineffective assistance of counsel claims. Accordingly, I cannot agree that the trial court erred in dismissing petitioner's successive postconviction petition at the second stage in appeal No. 3-21-0423, and I would remand to the appellate court to address the State's appeal in No. 3-21-0423, which granted petitioner a new trial after third stage proceedings.

¶ 102   JUSTICE O'BRIEN took no part in the consideration or decision of this case.